RAYMOND S. ROBERTS, INC. *v.* ENOS R. WHITE ET UX.

(97 A2d 245)

February Term, 1953.

Present: SHERBURNE, C. J., JEFFORDS, CLEARY and CUSHING, JJ., and HUGHES, Supr. J.

Opinion Filed May 5, 1953.

574

*F. J. Nash* and *Edward C. Barry* (*Ralph Chapman* on the brief) for the defendants.

*Barber & Barber* (*John S. Burgess* on the brief) for the plaintiff.

CUSHING, J.   This is an action of contract in the common counts with specifications covering an account between the parties involving the sale of car parts and the servicing of motor vehicles and trucks for a period from November, 1947, through May, 1951.  Trial was by court.  Findings of fact were filed and judgment was entered for the plaintiff.  The cause comes here upon defendants' exceptions.

About two months before the trial Annette J. White filed a motion to be discharged as a party defendant by reason of the fact that all charges in the account were made against, and allegedly payable by, the defendant Enos R. White.  This motion was brought to the attention of the court at the start of the trial, and at the conclusion of all the evidence her counsel asked if it would be proper to renew the motion to disjoin her as a party defendant, and the court replied: "I think it is premature.  I think it will have to be disposed of motion denied.  It will be disposed of in the findings in the ultimate decision."  No exception was taken at the time.  Later, after tentative findings had been made but before the filing of the final draft, the presiding judge, in reply to a letter from Annette's counsel asking that a special exception be saved to the denial of her motion, wrote that he would endeavor to preserve her rights in this regard in the judgment order.  Through oversight no such exception was noted in the judgment order.

Since the cause was one triable by jury, when tried by court it was the duty of the court to find and state the facts.  V. S. 47, § 2121.  Consequently the motion was inopportune, since, at the time it was made, the court had not made the required findings of fact.  *Roberge* v. *Town of Troy*, 105 Vt 134, 136, 163 A 770; *Wright* v. *Burbee*, 112 Vt 197, 199, 22 A2d 494.  Had the record shown that the court deferred a ruling on the motion until after the facts had been found and an exception had been allowed to its denial, such ex-

ception would have been before us. *Wright* v. *Burbee, supra*. However, the same question could have been raised under the exception to the judgment, and we will discuss it under that exception and will treat the brief on the motion as applying to that exception.

The findings show that the two defendants are husband and wife. They own and operate a farm in Brattleboro. All of their real estate is held by them as tenants by the entirety. The property of both is used in the cattle business, operation of a market in Wilmington and in the conduct of a general farming operation in Brattleboro. Funds employed in the various business activities of the defendant Enos White are held in a joint account in a Brattleboro bank in the names of both defendants. Receipts and proceeds from the business transactions conducted in the farm, cattle and market enterprises are deposited in this account. Disbursements for operating expenses are made by checks drawn on the account by Annette's signing the name of defendant Enos and adding her initials. Both defendants devote their full time and all their financial resources to the family enterprises. Both share in the profits and losses by way of their joint estate. All the motor vehicles used in conducting these enterprises have been registered in the name of Annette for a long time. None were registered in the name of Enos. These are the vehicles referred to in plaintiff's account. They were taken to the plaintiff's garage by Enos for servicing and repairs, and were returned to him. Prior to December 2, 1949, the account was carried in the name of Enos White alone. Thereafter when a new bookkeeping system was established in the plaintiff's office, charges were posted on a ledger sheet made out in the names of both defendants, but the individual repair sheets were listed in the name of Enos alone. After December 2, 1949, monthly statements were prepared from data on the ledger sheet and mailed to Enos, until May 25, 1951, when the parties ceased doing business with each other.

The only finding recited above that is questioned in defendants' brief and claimed to be supported by an exception is that "Both share in the profits and losses by their joint estate." The exception referred to was to three separate and distinct statements in the findings, one of which was the one just quoted. Nowhere in their brief do the defendants attempt to show that the other two statements are unsupported by the evidence. Consequently the exception as to them is waived. Because all three statements in the general exception are not shown to be unsupported by the evidence, the whole exception

is without avail. *Little* v. *Loud,* 112 Vt 299, 23 A2d 628; *Twin City Printery, Inc.* v. *Greiner,* 117 Vt 93, 85 A2d 500. We have, however, examined the transcript, and find that the quoted finding is supported by the evidence.

██ ██ It is difficult to follow defendants' brief, because it disregards the rule that where there is no available exception to the findings we will not look back of them to ascertain whether the evidence supports the judgment, *Little* v. *Loud, supra,* and keeps referring to the evidence. The only question is whether the findings support the judgment against Annette, and we must assume in favor of the judgment, that the trial court inferred such facts from the other facts certified as it ought to have done, or might fairly have done. *Barre City Hospital* v. *Town of St. Johnsbury,* 117 Vt 5, 7, 83 A2d 600; *Labor* v. *Carpenter,* 102 Vt 418, 422, 148 A 867.

██ Although the defendants insist that they were not partners, their argument is based almost entirely upon what they claim the evidence tends to show. No adequate attempt is made to show that the court might not have fairly inferred from the facts found that the defendants were partners. Tenancy by the entirety and the sharing of gross returns do not of themselves establish a partnership, but a receipt by a person of a share of the profits of a business is *prima facie* evidence that he is a partner in the business. V. S. 47, § 6068, § 7 of the Uniform Partnership Act. An agreement to share the profits and losses of an adventure is an essential element of a partnership, and, ordinarily, is sufficient to constitute the parties to such agreement partners. *Johnson & Co.* v. *Marsh and Ufford,* 111 Vt 266, 271, 15 A2d 577, 131 ALR 502. Such joint interest may result even though one party furnishes the capital or stock and the other contributes his labor and skill. *Sheldon* v. *Little,* 111 Vt 301, 305, 15 A2d 574, 137 ALR 1; *Brigham* v. *Dana,* 29 Vt 1, 10. Where the rights of the parties *inter se* merely are concerned, and no question as to third parties is involved, the criterion to determine whether the contract is one of partnership or not must be: what did the parties intend by the contract which they made as between themselves? This intention may be shown by their express agreement or inferred from their conduct and dealings with one another. *Sheldon* v. *Little, supra,* 111 Vt at p. 304, 15 A2d 574. It is important to note that it is not of the essence of a partnership that the parties to it should have known that their contract in law created a partnership. If the parties intend to and do enter into such a contract as in the

eye of the law constitutes a partnership, they thereby become partners whether they are designated as such or not in the contract. 40 Am Jur, Partnership, § 43, p. 157. A married woman may be a partner with her husband. V. S. 47, § 3162.

We think that the agreement of the defendants to hold title to their property as they did, to conduct business as they did, and to share in the profits and losses as they did, was such that the trial court might fairly infer that they were partners as between themselves.

■■ As partners the defendants were jointly and severally liable for the partnership debts, and each was an agent of the partnership for the purpose of its business. V. S. 47, §§ 6076 and 6070, §§ 15 and 9 of the Uniform Partnership Act. Consequently the rule in the law of agency relative to the liability of an undisclosed principal applies. Although the bills for servicing the motor vehicles for the family partnership were at first charged to Enos the plaintiff may recover of both defendants as partners if it was not aware of the situation at the time. *Carney* v. *Dennison,* 15 Vt 400; *Chase* v. *Robinson,* 86 Vt 240, 245, 84 A 867; *Spencer* v. *Town School District of Hartford,* 87 Vt 152, 156, 88 A 510. Thus in *Griffith & Co.* v. *Buffum and Ainsworth,* 22 Vt 181, 184, it is held that if one partner purchase property upon his individual credit for the partnership, and the seller is not aware of the existence of the partnership, he may, when he discovers it, have the benefit of the partnership liability. This case further states: "It is doubtless essential to the validity of such a claim by the vendor, that the partnership should have been unknown to him at the time of the sale; for if he were aware of the partnership, or ignorant of it through his own fault, he would be presumed to have made his election to give credit to the individual instead of the firm, and, having made such election, would be bound by it."

■ The findings do not disclose whether the plaintiff was aware of the way the defendants were doing business. If the defendants claimed that it knew or should have known they should have pleaded it, or at least procured a finding to that effect, since an election to give credit is analogous to an election of remedies. An election of remedies is an affirmative defense which must be pleaded and proved by the defendant. *Gardner* v. *Gauthier,* 101 Vt 147, 151, 141 A 682.

Defendants cite *Carter* v. *Howard,* 39 Vt 106, and *Bugbee* v.

*Blood,* 48 Vt 497, as support for the proposition that one who furnishes services on the credit of one individual cannot later repudiate his choice of debtor and look for payment from another person, on whose credit he might originally have relied. Both these cases have to do with credits given to a wife notwithstanding her relation to her husband. There was no undisclosed principal involved. *Chapman, Lord, Wright & Co.* v. *Devereaux and Noyes,* 32 Vt 616, is also cited. In that case the plaintiffs either knew or might readily have learned all the facts in the case, and still, after hearing a suggestion that Noyes was a partner, they continued to deal with Devereaux as the sole party in interest, to give credit exclusively to him, and to make no claim upon Noyes.

██ ██ The form of a charge is not conclusive. *Spencer* v. *Town School District of Hartford, supra.* The general rule is that a simple contract made by a duly authorized agent, who fails to disclose his principal, may be enforced against such principal when the other contracting party discovers the relationship of principal and agent, unless it clearly appears that the contracting party intended to give exclusive credit to the agent, irrespective of the existence or liability of the undisclosed principal, or unless the contract provides that an undisclosed principal shall not be a party to it. 2 Am Jur, Agency, § 394.

The findings support the judgment against Annette.

One more matter has been briefed. By way of credit on the account the court found that in the spring of 1946 a 1940 Chevrolet pick-up truck registered in Annette's name was involved in an accident, and was afterwards towed to the plaintiff's garage. At that time defendant Enos and Raymond Roberts, plaintiff's president, had a talk relative to the purchase of a new truck by Enos, and Roberts offered him between $300.00 and $400.00 in trade provided he could get a new truck of the type desired by Enos. Such new truck was found not to be available and Roberts so informed Enos. The damaged truck was left at plaintiff's garage, and sometime in 1949 one Ralph Carvage called on Roberts to purchase parts from it. Roberts referred him to Enos. Thereafter Carvage removed the truck and left $20.00 with the plaintiff, which was credited to defendants' account. The court found that the truck was sold without the consent of either defendant, and that on the undisputed evidence of Roberts its value after the accident was $35.00. The defendants excepted to the finding that the value of the truck after the

accident was $35.00 on the ground that the plaintiff conceded in his testimony that at that time the truck was worth $300.00 to $400.00.

The defendants' brief does not sustain the stated ground of the exception. Our attention is not called to any such concession. An offer of an allowance of $300.00 to $400.00 toward the purchase of a new truck does not show such a concession. It is a matter of common knowledge that motor vehicle dealers, in order to make a sale of a new automobile or truck, sometimes take a wrecked car in trade at much above its real value. Moreover, as appears in the findings, Roberts testified that the value of the truck after the accident was $35.00.

*Judgment affirmed.*

Note. Hughes, Supr. J. having retired from office took no part in this decision.