### Land Investment, Inc. v. Battleground Associates

[415 A.2d 753]

No. 151-78

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed April 17, 1980

*Gary H. Barnes* of *Downs, Rachlin & Martin,* South Burlington, for Plaintiff.

*Davison Associates, Inc.,* Stowe, for Defendant.

**Barney, C.J.** This litigation is best understood as a suit by the plaintiff to collect money claimed to be due under transactions in part expressed in a certain $50,000 note. The matter is not as simple as that, but the note obligation is a handy reference point to keep track of the cause.

The action is further confused by the shifting identities involved in the various arrangements and commitments out of which it arose. The plaintiff's side gives little trouble. The named corporate plaintiff, Land Investment, Inc., was a business entity through which Nathan Smith handled real estate transactions and various financing agreements.

The defendant, Battleground Associates, presents a more complex picture. It was a limited partnership, with its general partner being a Delaware corporation, the Sugar River Company. Sugar River, in turn, was the wholly owned subsidiary of another Delaware corporation called Whitecaps. One man, William Murphy, the single largest shareholder in Whitecaps, was a director and chief executive officer of both Sugar River and Whitecaps, and was Battleground's chief operating officer. In part, the litigation involves the exact capacity in which

Sugar River acted when it made certain commitments. As can be seen, there are certainly three possibilities: (1) it acted as general partner of Battleground Associates; (2) it acted on its own behalf; or (3) it acted in some capacity for the benefit of Whitecaps, its owner.

Murphy and Smith were known to each other and, through their corporate entities, had, since 1969, engaged in numerous business transactions involving the purchase, sale and mortgaging of real estate. These transactions were handled through the plaintiff's attorney in Maine. Smith, acting through the plaintiff, Land Investment, dealt with both Whitecaps and its subsidiary Sugar River, all in the person of Murphy. The defendant partnership, Battleground Associates, was as yet unformed.

In 1970 through 1972, Whitecaps, acting through Sugar River, assembled about a hundred and fifty-five acres in Fayston, Vermont, for the development of a condominium project. Permits were obtained for 63 units to be built on part of the Sugar River holdings in Fayston, a 76.2 acre parcel. A consortium was put together to invest $250,000 in the project. That was to be done as soon as a limited partnership was formed to serve as the investment vehicle, and title to the 76.2 acre parcel was conveyed to that partnership. The defendant, Battleground Associates, is that partnership.

Prior to the formation of Battleground, in order to provide some short term financing for the condominium project, Murphy, in his capacity as president of Sugar River, approached Smith for a $25,000 loan from Land Investment. The loan was secured by a promissory note from Sugar River secured by a mortgage on the corporation's lands. Payment was due in August 1973, but was delayed into October, at which time the note was repaid and the mortgage discharged. During this interval, Murphy had informed Smith that it was the delay in setting up Battleground Associates that interfered with prompt repayment. When made, repayment was by a check drawn on the account of Battleground Associates, which was just then in being. The check was sent directly to the bank from which the plaintiff, in turn, had borrowed the $25,000 to advance to Sugar River.

The second, and critical, deal between Smith and Murphy arose out of the sequence of events that followed the creation

of Battleground Associates. Sugar River participated as Battleground's general partner, with Whitecaps acting as guarantor of all of Sugar River's obligations as general partner. Murphy signed the partnership agreement on behalf of Sugar River, and the guarantee on behalf of Whitecaps. At this point, Sugar River conveyed to Battleground Associates the land on which the condominium project was to be built, with Murphy executing the deed on behalf of Sugar River.

In order to proceed with construction of the project, financing was necessary. Murphy, now acting as chief operating officer of the partnership, arranged for a loan with the Worcester County National Bank, a Massachusetts institution. The agreement for construction financing had many conditions, not all of which are of concern here. But one condition required that Battleground Associates provide for the sale of the first five condominium units before the loan funds were advanced. The financing agreement allowed for the satisfaction of this condition by the agreement of Whitecaps to purchase those five units, secured by "an Irrevocable Letter of Credit in favor of Lender [Worcester County National Bank] in the amount of $38,000." Another provision of the loan agreement prohibited Battleground from transferring or further incumbering any of its interest in the condominium project or the land involved.

Whitecaps did commit itself to purchasing the first five units. The Chittenden Trust Company agreed to provide the long term financing for that purchase. All that remained to make the entire project operable was the $38,000 in cash or letter of credit representing Whitecaps' down payment for the purchase. The evidence was that only a few weeks were available to accomplish this if the agreement was to be carried out.

At this point, Murphy again turned to Smith. The latter eventually agreed that Land Investment would provide the necessary letter of credit. To implement their agreement, substantial documentation was required. It was prepared by Land Investment's attorney. Among these documents was a written memorandum of the agreement which was signed by Smith as president of Land Investment and by Murphy in the following form:

THE SUGAR RIVER COMPANY

by s/William A. Murphy

Its President

Therefore, the face of the document reflected an agreement solely between Sugar River and Land Investment. It recited that at the request of Sugar River and for the benefit of Whitecaps, Land Investment would use its line of credit to obtain issuance of a $38,000 letter of credit. It stated that plaintiff was charging $12,000, plus all costs and expenses it might incur, for the use of its credit. It further provided that if the letter of credit was called, Sugar River was to repay the amount called, plus interest, in addition to the $12,000.

To secure these obligations, the agreement required that Sugar River execute a $50,000 interest bearing note supported by two mortgages on Sugar River owned real estate in Fayston. The real estate was not further described. Sugar River subsequently executed a first mortgage on a 5.9 acre parcel adjacent to the condominium site and a second mortgage, subject to a prior interest held by the Vermont Federal Savings and Loan Association, on a 50 acre parcel across the road from it.

Whitecaps defaulted under the purchase agreement in March 1974, and the letter of credit was called just prior to its expiration. The plaintiff then sought to enforce its remedies under the note and contract.

One procedure was a suit on the note foreclosing the mortgages on the 5.9 acre and 50 acre parcels owned by Sugar River. Besides suing on the note and mortgage, the plaintiff sought recovery based on certain representations allegedly fraudulently made by Murphy in connection with the letter of credit transaction. The plaintiff obtained a decree of foreclosure against the land, subject to any rights the Vermont Federal Savings and Loan Association had in the 50 acres under its prior mortgage. The Savings and Loan Association foreclosed on the plaintiff's subordinate equity of redemption in the 50 acre parcel and offered to release the parcel to plaintiff in return for $75,000. The plaintiff did not act to redeem and preserve whatever equity might remain.

Almost simultaneously with the action against Sugar River, this action against Battleground Associates was begun. Its

fundamental premise was simple enough. The plaintiff argued that all the activities involving the letter of credit arrangement were for the benefit of Battleground Associates and that Battleground received and still retains the benefits of that arrangement. Therefore, says the plaintiff, recovery of the note, fees, interest and damages directly from Battleground Associates is both legal and supported by the facts. In fact, it argues, there are several legal theories applicable, any one of which supports recovery. The trial court rejected each of these theories and rendered judgment for the defendant.

The first contention advanced to support reversal is that the acts of Sugar River in procuring the letter of credit were done as the general partner of Battleground Associates as part of carrying on the usual way the partnership purposes. In such a case, it is argued, the commitment of Sugar River to repayment of the letter of credit, together with its fees and interest, is effectively the commitment of the partnership.

As the general partner of Battleground, Sugar River is the partnership's agent. 11 V.S.A. §§ 1399, 1201(a). Pursuant to 11 V.S.A. § 1201(a), "the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership . . . ." The statute, a portion of our enactment of the Uniform Partnership Act (1941, No. 146, §§ 1 and 9), applies agency principles to partnership problems. Basic to any contract is the identity of the parties. H. Reuschlein & W. Gregory, Agency and Partnership § 23, at 58 (1979). Agency principles operate to make that identification in a manner which is comparable to the function of the objective theory of contract in determining questions of contract formation. Both concepts protect the innocent promisee from the hazards which would inevitably accompany reliance on the actual, but necessarily subjective, intent of the promisor. It may be that when Murphy signed the agreement for the letter of credit, his intent was to bind only Sugar River and Whitecaps. But the statute does not inquire into his actual intent. It asks only whether the signer, Sugar River, was in fact the partner of Battleground; was authorized, actually or apparently, to so bind Battleground; and whether the act was for apparently carrying on Battleground's business.

There being no dispute as to Sugar River's status as a partner of Battleground or as to Sugar River's authority to bind Battleground to such a contract, the next question is whether the act was for apparently carrying on Battleground's business.

The trial court's findings stand in the way of concluding that Sugar River's act was for carrying on Battleground's business. It was the trial court's view of the facts that the letter of credit was obtained by Sugar River for the benefit of its corporate principal Whitecaps in order for Whitecaps to fulfill its commitment to underwrite the purchase of the first five condominium units. Under *Raymond S. Roberts, Inc.* v. *White*, 117 Vt. 573, 578, 97 A.2d 245, 248 (1953), moreover, the trial court was entitled, under such circumstances, to conclude that the plaintiff had made an election to look to Whitecaps, rather than to Battleground.

The plaintiff argues that there is no factual support for this view of the evidence. This challenge requires a closer look at this area of the dispute. It is appropriate to look at the language of the principal instruments. In doing so we are mindful at all times that every reasonable intendment is to be made in favor of the result reached below, with doubtful findings construed to support the judgment. *Smead* v. *Sutherland*, 118 Vt. 361, 368, 111 A.2d 335, 340–41 (1955).

First, there is the letter of credit itself, an exhibit of the defendant. It was drawn on the National Shawmut Bank of Boston for the account of Land Investment, Inc., through its own bank, Depositors Trust of Bangor, Maine. Its essential terms read as follows:

> This credit has been established in terms of a contract executed between Chittenden Trust Company and Worcester County National Bank and Whitecaps a Delaware corporation.
>
> This credit is available by your sight draft(s) on us accompanied by:
>
> Affidavit of Worcester County National Bank that Whitecaps is in default under its agreement of March 6, 1974, with Battle Ground [*sic*] Associates regarding the purchase of five (5) condominium units.

The plaintiff put into evidence the agreement described above between itself and Sugar River for the letter of credit. Sugar River is described in that document as "a wholly owned subsidiary of Whitecaps (a corporation)." As noted above, the instrument is described as being "for the benefit of Whitecaps." The security described in the agreement consists of a $50,000 promissory note with an agreed interest note, plus two mortgages on real estate owned by Sugar River. The promissory note of Sugar River was guaranteed by Whitecaps in writing on the face of the note.

It should be noted that Whitecaps had entered into its agreement with Battleground to purchase five condominium units, subject to prior sale, all as requested by the lender, the Worcester County National Bank. That agreement was then assigned, as security, to the lender by Battleground Associates.

The plaintiff points to the following language in the commitment letter between the Worcester County National Bank and Battleground Associates as supporting its claim that the letter of credit was not required of Whitecaps, but of Battleground Associates:

> K. With respect to Phase 1A (5 units) Borrower shall deliver to Lender (1.) take out permanent loan commitments for the 5 condominium units acceptable in form and substance to the Lender in the amount of $217,750, and (2.) agreement by Whitecaps (Corporation) to purchase said 5 condominium units for $225,750, and an Irrevocable Letter of Credit in favor of Lender in the amount of $38,000.

This provision, says the plaintiff, establishes that Battleground Associates, the "Borrower" referred to, was required to furnish the letter of credit involved and that therefore the transaction by Sugar River with the plaintiff was really on behalf of the Battleground Associates partnership.

This argument oversimplifies the matter. It is not the case, even though so asserted by the plaintiff, that Whitecaps had no duty to provide the letter of credit. As the testimony supporting the trial court's finding discloses, the letter of credit represented the down payment required of Whitecaps in guaranteeing the purchase of the first five condominium units.

This letter of credit, as down payment, supported the money advanced by Chittenden Trust representing, essentially, first mortgage money on the units, as also reflected by the findings. This allowed the mortgage money to be forthcoming in advance of any possible separate sales of one or all of those first five units to others. In effect, Whitecaps was given a year to find buyers before its letter of credit was resorted to, and yet the Worcester County National Bank was given the immediate certainty of supporting funding it required to make the construction loan.

It was in this sense that Battleground Associates as borrower in the construction loan had a responsibility to see that the $38,000 supporting the Chittenden mortgage advance was furnished, either through Whitecaps' provision of a letter of credit, or in some other form.

■ The events that occurred are the best illustration that there were separate but supporting and concomitant burdens on Whitecaps and Battleground Associates to provide the $38,000, which took the form of the letter of credit. That instrument represented the down payment amount required of Whitecaps. Title to the five units passed to Whitecaps. The Chittenden Bank eventually foreclosed under its mortgage and took over title to the five units. There was no interest in Battleground Associates in the five units for the Chittenden Bank to concern itself with. The transactions interlocked, and the fact that Whitecaps, in carrying out its own transaction, also supported Battleground Associates' financing operations does not convert Whitecaps' purchase into a Battleground Associates transaction. Cf. *Brewer* v. *Elks*, 260 N.C. 470, 473, 133 S.E.2d 159, 162 (1963) (mere ultimate benefit to partnership does not render contract of a partner a partnership obligation).

As can be seen, the trial court had adequate factual foundation for determining that the letter of credit was, as it stated, a Whitecaps operation and properly so allocable. There was no place for the operation of any presumption in support of it being a partnership business, the specific facts being to the contrary. The participation of Sugar River quite clearly was in order to make available additional real estate security which Sugar River owned.

The plaintiff suggests, alternatively, that if it cannot prevail on the notion that the whole transaction was part of partnership business, it should then succeed on the theory of an undisclosed principal. This is also doctrine expressed in *Raymond S. Roberts, Inc.* v. *White, supra.* Its essence is that one making a contract with an agent, not knowing him to be other than a principal, is free to pursue remedies against the undisclosed principal, once discovered. The evidence which has been previously discussed, relating to the first financing arrangement of this development entered into by the plaintiff, supports the conclusion that the existence of Battleground had been disclosed. The remedy is not available if the existence of the principal is known at the time of contracting, since it would then be presumed, for example, that a sale to the agent would rest on an acceptance of that person's credit without resort to others. *Id.*

Moreover, Battleground Associates was not a principal, disclosed or undisclosed, in this transaction. As we have already seen, the application to the plaintiff for credit assistance was on behalf of Whitecaps. Any incidental benefit to the condominium developer, Battleground Associates, does not change the express contractual situation between Whitecaps, the plaintiff and the Worcester Bank. This doctrine is not a road to reach the assets of Battleground.

The balance of the plaintiff's attack on the decision below and its supporting findings centers on claims of fraud or, at least, negligent misrepresentation. The heart of the plaintiff's and Smith's complaint is that they were promised a second mortgage on the condominium property and did not get it.

The trial court passed upon that claim, made findings, and rejected it. Focusing upon this area of the testimony and findings, it appears that the letter of credit came into being as a result of the note and contractual agreement between the plaintiff and Sugar River executed on May 9th and 10th, 1974. The negotiations had taken most of the month of April 1974, and in the midst of it, on April 16, 1974, Battleground Associates and Worcester County National Bank executed a construction loan agreement covering the condominium project that contained a prohibition against second mortgages on the part of Battleground Associates, title holder of the condominium site.

It also appears from the evidence and the findings that the negotiations concerning the note and contract, as well as the mortgages, were drafted by the plaintiff's attorney and executed by Murphy for Sugar River and Smith for Land Investment, Inc. As already noted, the contract identifies itself as for the benefit of Whitecaps and the note is guaranteed by Whitecaps. The associated mortgages relate to land owned by Sugar River in Vermont. At that time the condominium property was not owned by Sugar River, and Battleground Associates is nowhere mentioned in any of the documentation prepared for transaction by plaintiff's attorney.

The trial court determined from the evidence before it that there was no fraud or negligence supporting recovery by the plaintiff. The plaintiff criticizes this as error on the basis that there was an estoppel generated by the judgment in a companion case against Sugar River. Although the lower court identified it as a default judgment, it actually was a summary judgment based on the failure to contest the plaintiff's allegations. The original complaint filed March 6, 1976, sought relief by way of foreclosure with no reference to issues relating to fraud or negligence. The amended complaint, raising those issues, was served on Sugar River July 13, 1977, twenty-six days before the hearing granting summary judgment. It is these allegations that the plaintiff would make factually conclusive by the operation of collateral estoppel.

It might be pointed out that collateral estoppel is a more limited concept than res judicata. It is limited in effect to those issues necessarily and essentially determined in the judgment rendered. *Trapeni* v. *Walker*, 120 Vt. 510, 513–14, 144 A.2d 831, 833 (1958); *Henderson* v. *Snider Brothers, Inc.*, 409 A.2d 1083, 1086 (D.C. App. 1979) (citing 1B Moore's Federal Practice ¶0.443 [1], at 3901 (3d ed. 1974)). An examination of the judgment order in the Sugar River case discloses that none of the relief given in that order involved the allegations of fraud sought to be found conclusive here. The order limited itself only to matters concerned in the foreclosure of the mortgages given by Sugar River to the plaintiff in connection with this loan transaction.

So we are returned to the findings in this case negating fraud and negligence, which are sufficiently undergirded with

evidence to be sustained, and, in turn, to support the judgment. In this portion of the plaintiff's case, also, the thrust of the evidence supports the conclusion of the trial court that the acts of Sugar River in its dealings with the plaintiff in this case were not acts on behalf of the defendant Battleground Associates, and the Court concurs in that determination.

There is an issue of unjust enrichment advanced by the plaintiff, determined adversely to it below. It is, perhaps, an ingenious claim, but has no legal footing. To sustain it, the Court would have to accept the proposition that one who borrows money to purchase real estate and defaults in the loan obligation unjustly enriches the seller at the expense of the lender. This is simply not the law.

*Affirmed.*