**HENKELS & McCOY, INC., Plaintiff,**

v.

**Robert ADOCHIO, et al., Defendants.**

**Civ. A. No. 94–3958.**

United States District Court,
E.D. Pennsylvania.

Oct. 26, 1995.

U.S.C. § 1367(a).

---

**8.** We will exercise supplemental jurisdiction over the remaining claims in Plaintiffs' complaint. 28

246

Robert J. Stern, La Brum and Doak, Philadelphia, PA, for plaintiff.

Gino J. Benedetti, Philadelphia, PA, Roger B. Kaplan, Mark F. Curley, Wilentz, Goldman and Spitzer, Woodbridge, NJ, for Robert Adochio, Ralph Anderson, Robert Bader, Ralph Baruch, John Buck, Alan Goldberg, Fred Green, Leonard C. Green, C. Bruce Johnstone, Herbert Kaufer, Bill Lucas, William Miller, Arthur Rothlein, Edward Rowan, Joseph Scutellaro, Conrad Strudler, Barry Wagenberg, Arthur Wellman, James R. Willing, Chester Davis.

## MEMORANDUM

LOWELL A. REED, Jr., District Judge.

Plaintiff Henkels & McCoy, Inc. brings this action under N.J.Stat.Ann. § 42:2A–46(b) against nineteen limited partners of Red Hawk North Associates, L.P. ("Red Hawk"), a New Jersey limited partnership. Plaintiff alleges that these defendants have received cash distributions from Red Hawk in violation of the Red Hawk Agreement of Limited Partnership and the Red Hawk Limited Partnership Certificate. Plaintiff seeks to have these funds returned to Red Hawk in order that a judgment plaintiff has obtained against Red Hawk may be satisfied. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332 as the parties are of diverse citizenship and the amount in controversy is in excess of $50,000, exclusive of interest and costs.

Currently before the Court are the motion by defendants for summary judgment and the cross-motion by plaintiffs for summary judgment. (Document Nos. 27, 30) For the following reasons, both motions will be denied.

## I. FACTUAL BACKGROUND

The following facts are undisputed.

In 1987 or 1988, Red Hawk and Cedar Ridge Development Corporation ("Cedar Ridge"), a New Jersey corporation, entered into a "Joint Venture Agreement" in order to form a partnership which was given the name Chestnut Woods Partnership ("Chestnut Woods"). Red Hawk and Cedar Ridge were both general partners of Chestnut Woods. Chestnut Woods was formed for the purpose of developing and then selling certain real property located in Bucks County, Pennsylvania (the "Property") which Cedar Ridge had previously arranged to purchase. Under the terms of the Joint Venture Agreement, Red Hawk agreed to provide $650,000 of capital for this development, and Cedar Ridge agreed to act as the Managing Partner and the General Contractor for the partnership and to assign the purchase agreement for the Property to the partnership.

On December 29, 1988, Cedar Ridge entered into a "Subcontract Agreement" with plaintiff; in that agreement, Cedar Ridge agreed to pay plaintiff a fixed price of $300,270 for the installation of storm and sanitary sewer systems on the Property. The Subcontract Agreement identified Cedar Ridge solely as the General Contractor for the development project. No mention of the partnership connection between Cedar Ridge and Chestnut Woods was made in the agreement, and plaintiff was unaware that Cedar Ridge was a partner in Chestnut Woods when plaintiff entered into the agreement.

Plaintiff began work on the sewer systems project on January 16, 1989. Plaintiff's first two invoices to Cedar Ridge, sent in February and May of 1989, were paid in full by Cedar Ridge, with plaintiff receiving payment on April 6, 1989 and July 12, 1989 respectively. Plaintiff's August, September and November invoices were not paid in full, however; Cedar Ridge only paid $25,000 on the $215,174.50 August invoice and made no payments on the other two invoices, leaving a total unpaid balance of $237,943.50.

Also during 1989, Cedar Ridge made various cash payments to Red Hawk, and Red Hawk then distributed the bulk of those payments to its limited partners. On January 6, 1989, Cedar Ridge made a payment to Red Hawk in the amount of $78,750, and on January 11, 1989, Red Hawk in turn made a distribution to its limited partners in the amount of $76,923, leaving a balance of $1,904 in Red Hawk's checking account. On April 4, 1989, Cedar Ridge made payment to Red Hawk in the amount of $215,000 and on the same day Red Hawk made distributions to its limited partners of $210,000, leaving a balance of $5,782 in Red Hawk's checking account. And finally, on July 6, 1989, Cedar Ridge made a payment to Red Hawk in the amount of $215,000, and on either July 7, 1989 or July 10, 1989, Red Hawk made distributions to its limited partners of $210,000, leaving a balance of $8,779 in Red Hawk's checking account. Despite these low cash balances, it is undisputed that Red Hawk was solvent throughout 1989.

On March 16, 1990, Cedar Ridge sold its remaining assets to Red Hawk. Then in April 1990, G & A Development Corporation ("G & A"), the general partner for Red

Hawk, entered into an agreement with plaintiff for the payment of Cedar Ridge's outstanding obligations to plaintiff, including $12,002.16 in interest on those obligations. Only two payments, $3,000 in April 1990 and $5,000 in June 1990, were made to plaintiff pursuant to this agreement, however.

On December 19, 1990, plaintiff brought suit in the United States District Court for the Eastern District of Pennsylvania against Cedar Ridge and Red Hawk, trading as Chestnut Woods. In its complaint, plaintiff made claims of breach of the Subcontract Agreement, breach of the April 1990 agreement, unjust enrichment, quantum meruit, and conspiracy to defraud. On October 15, 1991, judgement was entered for plaintiff and against Cedar Ridge and Red Hawk in the amount of $282,421.55, including interest. Plaintiff then discovered, however, that Cedar Ridge and Red Hawk were unable to satisfy this judgment, and to date the judgment has not been satisfied in whole or in part.

Plaintiff then brought suit in June 1992 against G & A in its capacity as general partner of Red Hawk for the amount of the previously obtained judgment. On August 12, 1992, default judgment was entered against G & A in the amount of $282,424.55 [1] plus interest at 6% per annum from October 15, 1991. After obtaining this default judgment, plaintiff learned that G & A was also unable to satisfy the judgment against it, and to date this second judgment has also not been satisfied in whole or in part. Plaintiff then filed the instant suit on June 27, 1994 seeking to have defendants return to Red Hawk the cash distributions they received in 1989 as limited partners so that Red Hawk could satisfy the judgment obtained by plaintiff against it.

## II. DISCUSSION

■ Under Fed.R.Civ.P. 56(c), summary judgment may be granted when, "after considering the record evidence in the light most favorable to the nonmoving party, no genuine issue of material fact exists and the moving

party is entitled to judgment as a matter of law." *Turner v. Schering–Plough Corp.,* 901 F.2d 335, 340 (3d Cir.1990). For a dispute to be "genuine," the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Defendants argue that they are entitled to summary judgment because (1) plaintiff's claim against them is barred by New Jersey's entire controversy doctrine, (2) creditors of limited partnerships lack standing to bring an action under N.J.Stat.Ann. § 42:2A–46(b), and (3) even if creditors do have such standing, plaintiff was not a creditor of Red Hawk when the distributions were made in 1989. Plaintiff responds by countering each of defendants' arguments and by asserting that it is entitled to summary judgment because there is uncontradicted evidence demonstrating that the distributions at issue here violated the Red Hawk Agreement of Limited Partnership and the Red Hawk Limited Partnership Certificate. The arguments of defendants in support of their motion for summary judgment will be addressed first, followed by consideration of the arguments of plaintiff in support of its cross-motion for summary judgment.

### A. *Entire Controversy Doctrine*

The Supreme Court of New Jersey has adopted an "entire controversy doctrine":

Accordingly, we now hold that to the extent possible courts must determine an entire controversy in a single judicial proceeding and that such a determination necessarily embraces not only joinder of related claims between the parties but also joinder of all persons who have a material interest in the controversy.

*Cogdell v. Hospital Ctr. at Orange,* 116 N.J. 7, 560 A.2d 1169, 1178 (1989). Following the *Cogdell* decision, the effect of this doctrine was codified by the Supreme Court:

Non-joinder of claims or parties required to be joined by the entire controversy doc-

---

**1.** The three dollar difference between the base amount of this August 1992 judgment and the amount of the October 1991 judgment appears to

have been merely a clerical mistake that first occurred in plaintiff's complaint against G & A.

trine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by R. 4:64–5 (foreclosure actions) and R. 4:67–4(a) (leave required for counterclaims or cross-claims in summary actions).

New Jersey Rule of Court 4:30A. Defendants argue that since the instant action is being brought pursuant to New Jersey substantive law plaintiff should have joined defendants in its initial suit against Cedar Ridge and Red Hawk or, at a minimum, in its suit against G & A. As plaintiff failed to so join defendants, defendants argue that plaintiff's instant claim against them is barred by the entire controversy doctrine.

■ After defendants filed their briefs relating to the instant motions, the Supreme Court of New Jersey issued an opinion clarifying the application of the entire controversy doctrine to cases brought outside of New Jersey. While holding that the doctrine applied even if the first judicial proceeding was brought outside of New Jersey as long as the second judicial proceeding was brought within New Jersey, the Supreme Court went on to hold that the doctrine did not apply when the second judicial proceeding was also brought outside of New Jersey:

> This ruling presupposes that when the procedural rules of foreign jurisdictions permit the omitted claims to be brought later, the foreign jurisdiction is free to entertain such claims. Just as we do not seek to export our procedural requirements of party joinder, we do not seek to export any preclusive effect to our rules of party joinder.

*Mortgagelinq Corp. v. Commonwealth Land Title Ins. Co.*, 142 N.J. 336, 662 A.2d 536, 537 (1995). Therefore, this Court concludes that New Jersey's entire controversy doctrine is not applicable to the instant action as both the instant action and the previous judicial proceedings were brought in the United States District Court for the Eastern District of Pennsylvania and not in New Jersey.

**B.  Standing**

Plaintiff seeks to have defendants return to Red Hawk the distributions they received from Red Hawk in 1989; plaintiff bases this suit on a provision of the New Jersey Uniform Limited Partnership Law, N.J.Stat. Ann. § 42:2A–46(b):

> If a limited partner has received the return of any part of his contribution in violation of the partnership agreement or this chapter, he is liable to the limited partnership for a period of six years thereafter for the amount of the contribution wrongfully returned.

Defendants argue that this section leaves the right to seek return of an improper distribution exclusively with the limited partnership, and, therefore, plaintiff lacks standing to pursue this action on its own behalf.

■ The Supreme Court of New Jersey has not addressed the issue of creditor standing under this statute. When the highest court of a state has not ruled on an issue of state law, a federal court is required to predict how that court would rule. *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967). The federal court may consider a range of information, including "relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 663 (3d Cir.), *cert. denied*, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980).

■ The parties have not cited and this Court has not found any New Jersey state courts that have addressed this issue. But a federal court applying subsection (a) of N.J.Stat.Ann. § 42:2A–46, which provides for the retrieval of returns of contributions to limited partners if within a year of the return the funds are needed to discharge liabilities to creditors, has held that a creditor of an insolvent limited partnership has standing under subsection (a) to sue limited partners on behalf of the limited partnership in order to force them to remit to a limited partnership returns of contributions. *See Neuner v. C.G. Realty Capital Ventures–I, L.P.*, 157 B.R. 766, 772–74 (D.N.J.1993). State courts outside of New Jersey applying similar provi-

sions have gone even further, stating that a creditor need only bring suit "in the right of the partnership itself to recover the funds necessary to discharge its liability to plaintiff." *Whitley v. Klauber*, 51 N.Y.2d 555, 435 N.Y.S.2d 568, 575, 416 N.E.2d 569, 576 (1980); *see also Kittredge v. Langley*, 252 N.Y. 405, 169 N.E. 626 (1930); *Retzke v. Larson*, 166 Ariz. 446, 803 P.2d 439 (Ct.App. 1990) (ruling that a creditor could maintain a garnishment action against a limited partner without any indication that the creditor was proceeding on behalf of the limited partnership); *Donroy, Ltd. v. United States*, 301 F.2d 200, 205 (9th Cir.1962) (holding that under California's codification of the predecessor to subsection (a), the liability of a limited partner to a partnership may, under certain circumstances, be enforced by a creditor). The court in *Neuner* relied on the fact that often the general partner may lack the capacity or the will to pursue wrongful distributions to limited partners, thus leaving a creditor without remedy in the very situation where this statute would be most needed. *Neuner*, 157 B.R. at 774; *see also Kittredge*, 169 N.E. at 631 (holding that a limited partner's "contribution, like the capital of a corporation, and to a similar extent, is to be treated as a trust fund for the discharge of liabilities"). This Court concludes that the Supreme Court of New Jersey would find this reasoning both persuasive and applicable to subsection (b) as well as to subsection (a); if a creditor lacked standing to bring suit to recover returns of contributions distributed in violation of the law or a partnership agreement, there would often not be an avenue for those improper distributions to be recovered by the limited partnership and ultimately by creditors that were not paid as a result of the improper distributions.

■ Defendants further argue, however, that even if a creditor could have standing under N.J.Stat.Ann. § 42:2A–46(b) if he or she brought suit on behalf of a limited partnership, plaintiff here lacks such standing because it is pursuing this suit on its own behalf and not on behalf of Red Hawk. This distinction might be critical if creditors other than plaintiff have a claim to the returned contributions. *See Whitley*, 416 N.E.2d at 574–75 (noting that plaintiff's claim was the

only remaining unpaid claim against the limited partnership involved); *Kittredge*, 169 N.E. at 627 (same). But defendants have produced no evidence and have not even alleged that other Red Hawk creditors might also have a claim to the cash distributions sought here, so this distinction is of little importance to the instant case. In addition, even if this distinction was critical, plaintiff has pled that "the Defendants are liable to Red Hawk" and, in its prayers for relief, that the damages sought "should be returned to Red Hawk for payment of its indebtedness to Plaintiff." Complaint ¶ 46 & at 8; amended complaint ¶ 47 & at 6–7. Complaints and amended complaints should be read liberally, and therefore passages can be read as asserting a claim on behalf of Red Hawk, although the ultimate result sought by plaintiff is satisfaction of the judgment it has obtained against Red Hawk. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506, 79 S.Ct. 948, 954, 3 L.Ed.2d 988 (1959) (holding that prayers for relief should be construed liberally). While plaintiff in its various briefs has not embraced the idea that it is suing on behalf of Red Hawk, plaintiff has also not rejected this idea but has only emphasized that it need not be a "successor" to Red Hawk in order to have standing to pursue this action. *See* plaintiff's reply brief at 2 n. 2. Therefore, this Court concludes that plaintiff has standing under N.J.Stat.Ann. § 42:2A–46(b) to pursue this action.

### C. *Plaintiff as Creditor of Red Hawk*

Defendants argue that plaintiff was not a creditor of Red Hawk at the time that the 1989 distributions were made and so even if a creditor would have standing to bring this suit under N.J.Stat.Ann. § 42:2A–46(b), plaintiff does not. Defendants make three arguments to support this position: (1) plaintiff was a creditor of only Cedar Ridge in 1989, as plaintiff's Subcontract Agreement was only with Cedar Ridge as General Contractor for the sewer systems project and not with Chestnut Woods or Red Hawk; (2) plaintiff was not a creditor of Red Hawk when the distributions were made in 1989 as Red Hawk was only a guarantor of collection and not of payment by Chestnut Woods; and

(3) plaintiff was not a creditor of Red Hawk when the distributions were made in 1989 because when those distributions were made Cedar Ridge was paid up and current on all the invoices submitted by plaintiff to Cedar Ridge. Before addressing each of these arguments, the Court will address plaintiff's argument that defendants are collaterally estopped by the judgments obtained in the previous litigation between plaintiff and Red Hawk from attacking plaintiff's alleged status as a creditor of Red Hawk in 1989.

### 1. Collateral Estoppel

■ Plaintiff argues that defendants are collateral estopped from challenging its status as a creditor in 1989 of Red Hawk in that plaintiff has obtained a judgment against Red Hawk. An issue, such as whether plaintiff was a creditor of Red Hawk in 1989, can only be precluded " '[w]hen an issue or fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment.' " *Rider v. Pennsylvania,* 850 F.2d 982, 989 (3d Cir.) (quoting Restatement (Second) of Judgments § 27 at 250 (1982)), *cert. denied,* 488 U.S. 993, 109 S.Ct. 556, 102 L.Ed.2d 582 (1988). The one page judgment obtained by plaintiff against Red Hawk fails to identify the count of plaintiff's complaint against Red Hawk upon which it is based. *Henkels & McCoy, Inc. v. Cedar Ridge Dev. Corp.,* Civ.A. No. 90–7978, judgment order (E.D.Pa. Oct. 15, 1991). As defendants note, the judgment could have been based solely on plaintiff's breach of the 1990 agreement claim, Count V; therefore, it was not essential for the judgment that the court find in plaintiff's favor on the other counts, and it is only a finding in plaintiff's favor on those other counts that could have established that plaintiff was a creditor of Red Hawk prior to the creation of the 1990 agreement. Therefore, this Court concludes that consideration of the issue of whether plaintiff was a creditor of Red Hawk in 1989 is not precluded by the 1991 judgment against Red Hawk.

### 2. Cedar Ridge as General Contractor

■ In making this argument, defendants rely both on the undisputed fact that the Subcontract Agreement identifies Cedar Ridge only as the General Contractor for the project without linking Cedar Ridge to Chestnut Woods and on the undisputed fact that plaintiff was unaware that Cedar Ridge was indeed a partner in Chestnut Woods when plaintiff entered into that agreement. *See* Subcontract Agreement; Couchara Dep. at 34, 37 (employee of plaintiff explaining that his understanding was that the Subcontract Agreement was only with Cedar Ridge, a separate legal entity from Chestnut Woods). When a general partner acts within his or her actual authority under the partnership agreement, that partner usually binds the partnership even if he or she only acts in his or her own name. *E.g., Seybolt v. Bio–Energy of Lincoln, Inc.,* 38 B.R. 123, 127 (Bankr.D.Mass.1984); *Kavalaris v. Cordalis,* 18 N.W.2d 137, 139 (Minn.1945); *see also* 15 Pa. Cons.Stat.Ann. § 8321(a) ("[e]very partner is an agent of the partnership for the purpose of its business and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership unless the partner so acting has in fact no authority to act for the partnership in the particular matter and the person with whom he is dealing has knowledge of the fact that he has no such authority"); N.J.Stat.Ann. § 42:1–9(1) (same). Even if a third party is unaware that the partner is acting on behalf of the partnership, as long as that partner acts with actual authority in order to benefit the partnership, the partnership is bound by whatever agreement is made with that third party. *E.g., Seybolt,* 38 B.R. at 127; *Builders Steel Co. v. Hycore, Inc.,* 877 P.2d 1168, 1173 (Ok.Ct.App.1994), *cert. denied* (June 22, 1994); *Raymond S. Roberts, Inc. v. White,* 117 Vt. 573, 97 A.2d 245, 248 (1953); *Levy v. Iavarone,* 9 N.J.Misc. 450, 154 A. 527 (1931). This is an application of the agency rule that undisclosed principals are liable for agreements entered into by their agents acting within their actual authority. *See Builders Steel Co.,* 877 P.2d at 1173; *Raymond S. Roberts, Inc.,* 97 A.2d at 248; *see generally* Restatement (Second) of Agency § 186 (1958). This agency rule has been adopted by both New Jersey and Pennsylvania

courts. *See, e.g., In re Hunt's Pier Assoc.,* 154 B.R. 436, 447 (Bankr.E.D.Pa.) (applying New Jersey law), *aff'd,* 162 B.R. 442 (E.D.Pa. 1993), *aff'd,* 31 F.3d 1171 (3d Cir.1994) (table); *Levy,* 154 A. 527 (same); *Joseph Melnick Bldg. & Loan Ass'n v. Melnick,* 361 Pa. 328, 64 A.2d 773, 776 (1949) (applying Pennsylvania law).

■ In the instant case, it is undisputed that Cedar Ridge was acting under its actual authority as granted in the Chestnut Woods partnership agreement. *See* Joint Venture Agreement, Chestnut Woods Partnership ¶¶ 13.1, 24.1. It is also undisputed that the sewer systems being installed on the Property owned by the Chestnut Woods were for the benefit of Chestnut Woods, and that the partnership agreed to cover all the costs incurred by Cedar Ridge as General Contractor, in effect protecting Cedar Ridge from individual liability for the costs associated with agreements it entered into as General Contractor. *See* Joint Venture Agreement Chestnut Woods Partnership ¶ 24.1. Defendants argue, however, that Cedar Ridge wore two hats under that agreement, one as the Managing Partner with the power to bind the partnership and the other as the General Contractor with the power to hire employees and sub-contractors for the project but to only bind itself and not the partnership. *Compare id.* ¶ 13.1 *with id.* ¶ 24.1. Defendants cite no authority to support this "two hats" argument, and this Court has found none. In light of this lack of authority, the general partnership and agency law discussed above, the fact that Cedar Ridge was acting within its actual authority under the Chestnut Woods partnership agreement for the benefit of the partnership, and the fact that Chestnut Woods was liable on the costs incurred by Cedar Ridge in its capacity as General Contractor, this Court concludes that Cedar Ridge bound Chestnut Woods and therefore Red Hawk as a general partner in Chestnut Woods when it entered into the Subcontract Agreement with plaintiff even though plaintiff was unaware at the time that Cedar Ridge was a general partner in Chestnut Woods.

### 3. Guarantor of Collection not Payment

Defendants also argue that plaintiff was not a creditor for the purposes of bringing suit under N.J.Stat.Ann. § 42:2A–46(b) because Red Hawk, as a general partner, was only the guarantor of collection with regard to the Chestnut Woods partnership and so plaintiff was not a creditor of Red Hawk until plaintiff had failed to collect from Chestnut Woods. Defendants support this argument by noting that general partners usually face only joint as opposed to joint and several liability when sued in conjunction with the partnership itself. *See* N.J.Stat.Ann. § 42:1–15(b); 15 Pa. Cons.Stat. § 8327(2). In other words, a general partner can be found liable on a debt incurred by the partnership but is only required to actually pay the debt if the partnership is unable to do so. *See, e.g., Seventy–Three Land, Inc. v. Maxlar Partners,* 270 N.J.Super. 332, 637 A.2d 202, 205 (App.Div.1994) (noting that a creditor who successfully sues a partnership and its general partners will only obtain a judgment of liability against the general partners until it is proven that the partnership cannot satisfy the judgment against it).

■ The term "creditor" is broadly defined under the common law. For example, Black's Law Dictionary notes:

> The term "creditor," within the common-law and statutes that conveyances with intent to defraud creditors shall be void, includes every one having right to require the performance of any legal obligation, contract, or guaranty, or a legal right to damages growing out of a contract or tort, and includes not merely the holder of a fixed and certain present debt, but every one having a right to require the performance of any legal obligation, contract, or guaranty, or a legal right to damages growing out of contract or tort, . . . .

*Black's Law Dictionary* 368 (6th ed. 1990). And the Uniform Fraudulent Transfers Act, which has been adopted by New Jersey, states:

> "Claim" means a right to payment, whether or not the right is reduced to a judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, un-

disputed, legal, equitable, secured, or unsecured.

"Creditor" means a person who has a claim.

N.J.Stat.Ann. § 25:2–21. While the New Jersey Uniform Limited Partnership Law leaves the term "creditor" undefined, these broad definitions are not only drawn from the common law but are also consistent with the remedial purpose of N.J.Stat.Ann. § 42:2A–46. *See Neuner,* 157 B.R. at 774 (holding that N.J.Stat.Ann. § 42:2A–46 is a remedial statute designed to protect creditors and should be interpreted with this purpose in mind). Therefore, this Court concludes that the Supreme Court of New Jersey would apply these broad definitions in determining whether plaintiff in the instant case was a "creditor" of Red Hawk at the time that the distributions were made to defendants in 1989.

As these definitions include within the term "creditor" a person who has an unmatured or contingent claim, the joint versus joint and several liability distinction noted by defendants is not relevant. While plaintiff's claim against Red Hawk was contingent on successful performance of the Subcontract Agreement, and on Chestnut Woods being unable to pay the monies owed on that agreement, these contingencies do not, under the broad definition of creditor adopted above, disqualify plaintiff from being considered a creditor of Red Hawk at the relevant times. Therefore, this Court concludes that plaintiff was a creditor of Red Hawk from the time that the Subcontract Agreement was entered into, that is from December 29, 1988, regardless of the fact that Red Hawk was a "guarantor of collection" as opposed to a guarantor of payment.

**4. Invoices Paid in Full and Current**

▮ Defendants final argument is that since the invoices billed by plaintiff were all paid in full when each distribution was made by Red Hawk to defendants, plaintiff was not a creditor at the time that the distributions were made. Defendants cite to a Georgia case holding that under Georgia's codification of the predecessor to N.J.Stat.Ann. § 42:2A–46(a), a party cannot assert a contract claim under this provision unless the contract is breached prior to when the distributions are made. *See First Bank & Trust Co.,* 297 S.E.2d at 351. This Court concludes that this case would not be persuasive to the Supreme Court of New Jersey for two reasons.

First, this case is distinguishable, as it involved Georgia's codification of the predecessor to subsection (a) of N.J.Stat.Ann. § 42:2A–46; this Georgia statute only applies to a creditor who extended credit to the limited partnership or whose claims arose against the limited partnership during the period the contribution was held by the partnership. *See* Ga.Code Ann. § 14–9–48(d). Therefore, the key issue in this Georgia case was not when the plaintiff became a "creditor" but when plaintiff's claim "arose," that is became fixed. *See First Bank & Trust Co.,* 297 S.E.2d 349, 350–51. The strictness of this requirement is reasonable in light of the fact that such a creditor can force limited partners to remit the returns on their contribution that they have received even if the distribution of the return on their contribution did not violate the law or the partnership agreement. In contrast, under subsection (b) of N.J.Stat.Ann. § 42:2A–46, the statutory provision which is involved here, a creditor can only force the return of the contributions if the initial distribution violated either the law or the partnership agreement, and there is no mention in this subsection of the credit having to be extended or the claim having to arise while the contribution was held by the limited partnership in order for a creditor to seek to have improper distributions returned to the limited partnership.

Second, the *First Bank & Trust Co.* case ignored the remedial purpose of both subsections (a) and (b) and the broad common law definition of creditor discussed above. Therefore, this Court concludes that the Supreme Court of New Jersey would be unlikely to adopt the holding of this Georgia court. As a result, this Court concludes that if faced with this situation the Supreme Court would hold that as long as a contractual obligation existed between Chestnut Woods and plaintiff, plaintiff was a creditor of Red Hawk.

Having addressed and rejected all of defendants' arguments in support of their mo-

tion for summary judgment, this Court concludes that the motion by defendants for summary judgment must be denied. The discussion will now turn to plaintiff's arguments in support of its cross-motion for summary judgment.

### D. *Violation of Partnership Agreement and Partnership Certificate*

In order for the distributions to defendants to have been improper under the New Jersey Uniform Limited Partnership Act and thus subject to being returned to Red Hawk, the distributions must have (1) constituted a return of the defendants' contribution to Red Hawk and (2) have been "in violation of the partnership agreement or this chapter." N.J.Stat.Ann. § 42:2A–46(b). It is undisputed that at least a portion of the distributions at issue here were returns of contributions, and plaintiff does not assert that the distributions violated the New Jersey Uniform Limited Partnership Act; rather, plaintiff has focused its arguments in support of its cross-motion for summary judgment on alleged violations of the Red Hawk Agreement of Limited Partnership and of the Red Hawk Limited Partnership Certificate.

The Red Hawk partnership agreement provides as follows:

12. *Distributions*

(a) *Application of Cash Receipts.* Cash Receipts shall be applied in the following order of priority:

(i) to the extent required, to the creditors of the Partnership, except to any Partner or any Affiliate thereof;

(ii) to the extent required, to the payment of any debts or liabilities to any Partner or any Affiliate thereof (other than a loan to the Partnership by the Partner);

(iii) to the payment in full of any loans to the Partnership by a Partner;

(iv) to the establishment of such reserves as the General Partner shall reasonably deem necessary; and

(v) to distributions to the Partners in accordance with Paragraphs 12(b) and (c) hereof [relating to the mechanics and allocation of such distributions]

Red Hawk Agreement of Limited Partnership ¶ 12(a). Specifically, plaintiff asserts that these distributions violated (1) the provision of the partnership agreement that gave priority in the distribution of cash receipts "to the extent required, to the creditors of the Partnership," (2) the provision that gave priority in the distribution of cash receipts "to the establishment of such reserves as the General Partner [G & A] shall deem reasonably necessary," and (3) various provisions of the Red Hawk Limited Partnership Certificate. Each of these alleged violations will be addressed in turn.

### 1. "to the extent required, . . ."

Plaintiff argues that since it was a creditor of Red Hawk at the time the cash distributions were made to defendants, the cash used for those distributions should have been used for the anticipated amounts due to it. While the partnership agreement does not define "creditor," plaintiff has assumed and defendants do not contest that the term "creditor" is defined pursuant to the usual common law definition. As has already been discussed, the broad common law definition encompasses plaintiff as a party to the Subcontract Agreement.

Defendants instead focus on the phrase "to the extent required," which they assert limits payments to creditors to those due and owing at the time when the cash receipts were received by Red Hawk. Neither plaintiff nor defendants cite any case law interpreting a phrase similar to the one at issue here, and this Court has been unable to find any. Looking at the partnership agreement as a whole, as required when interpreting a contract under New Jersey law, this Court concludes that the phrase "to the extent required" is unambiguously limited to bills that are actually due and owing at the time that the cash receipts are received. *See VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 641 A.2d 519, 524 (1994) (holding that contracts should be examined as a whole when determining the intent of the parties). This conclusion is supported by the fact that other provisions of the Red Hawk partnership agreement provide for future expenses, such as the provisions giving G & A as

general partner the power "to establish reasonable reserve funds from income derived from the Partnership's operations to provide for future maintenance, repair, replacement, debt service or similar requirements" and to retain cash receipts in order "to defray expenditures for any repair or improvement to any Property." Red Hawk Agreement of Limited Partnership ¶¶ 9(b)(ix), 12(a). The inclusion of these other provisions argues against plaintiff's interpretation of "to the extent required." In addition, the "to the extent required" provision clearly anticipates actual payment of the cash receipts to the creditors, and it would be unreasonable to require G & A to make payments to creditors when no bills are outstanding, even if such bills are expected in the near future. Therefore, this Court concludes that the distributions at issue here did not violate this provision of the Red Hawk Agreement of Limited Partnership.

## 2. Establishment of Reserves

Prior to making distributions to Red Hawk limited partners, cash receipts were required to be applied "to the establishment of such reserves as the General Partner shall reasonably deem necessary." Red Hawk Agreement of Limited Partnership ¶ 12(a)(iv). Plaintiff argues that G & A failed to use Red Hawk's cash receipts to establish such reserves as required by this provision; plaintiff points to the low cash balances that were left in Red Hawk's checking account after each distribution to defendants and to the affidavit of a certified public accountant, Richard S. Levine. Plaintiff argues that the establishment of such reserves was a duty of G & A as general partner. Defendants counter that Richard S. Levin's affidavit contains purely conclusory statements and that, under conditions, the report of Stanton L. Metlzer, also a certified public accountant, establishes that there is a material factual dispute over whether G & A was required to establish such cash reserves in light of the significant net worth of Red Hawk throughout 1989. *See* Report of Robert B. Kaplan, C.P.A., at 8.

In paragraph nine of the Red Hawk partnership agreement, G & A is given the power as general partner to establish re-

serves, although that paragraph does not require that such reserves be established. Red Hawk Agreement of Limited Partnership ¶ 9(b)(ix). And paragraph twelve of the partnership agreement does state that cash receipts "shall be applied" to the establishment of reserves before being applied to distributions to the limited partners. *Id.* at ¶ 12(a). In addition, paragraph twelve includes after the list of priorities two potential uses for cash receipts which are discretionary:

Notwithstanding the foregoing [priority list], the General Partner shall not retain and invest any Cash Receipts derived from the operations of the Property, except (1) to defray expenditures for any repair or improvement to any Property, which it, in its sole discretion, deems appropriate or (2) for investments of reserves permitted to be established under clause (ix) of paragraph 9(b) hereof....

*Id.* If the parties intended that keeping reserves would be completely within the discretion of G & A, they could have included the reserves language in this latter, discretionary portion of paragraph twelve rather than in the list prioritizing the application of cash receipts. Therefore, this Court concludes that under the Red Hawk Agreement of Limited Partnership G & A was required to use the cash receipts received by Red Hawk to establish reasonably necessary reserves prior to distributing those cash receipts to the limited partners. The Court also concludes, however, that the evidence of record, including the conflicting expert statements and the apparently high net worth but low cash balances of Red Hawk in 1989, creates a genuine issue of material fact regarding the proper level for those reserves, and therefore regarding whether the distributions at issue here violated this reserves requirement. As a result, the Court concludes that plaintiff's cross-motion for summary judgment cannot be granted based upon the current record and this argument.

## 3. Limited Partnership Certificate

Plaintiff also cites to two provisions of Red Hawk's limited partnership certificate that allegedly barred the distributions at issue here. Defendants have not responded di-

rectly to this argument, and neither plaintiff nor defendants have discussed whether N.J.Stat.Ann. § 42:2A:46(b), which on its face only applies to violations of the New Jersey Uniform Limited Partnership Law or a partnership agreement, would apply to violations of a limited partnership certificate. This Court thinks it is unlikely that violations of the certificate were meant to be included in § 42:2A:46(b) in that a separate statutory provision provides a remedy for creditors who rely on false statements in a limited partnership certificate. *See* N.J.Stat.Ann. § 42:2A–22 (providing damages for one who relies on a false statement in a certificate). This Court has been unable to find any case law on this point, however, either in New Jersey or elsewhere. In light of the lack of advocacy and the lack of case law on this point, this Court concludes that it would be premature to resolve this issue at this time.

## III. CONCLUSION

For the foregoing reasons, this Court concludes (1) that plaintiff's claim is not precluded by New Jersey's entire controversy doctrine, (2) that plaintiff, as a creditor of Red Hawk at the time the 1989 distributions were made, has standing pursuant to N.J.Stat. Ann. § 42:2A–46 to bring its instant claim, (3) that paragraph 12(a)(i) of the Red Hawk Agreement of Limited Partnership was not violated by the cash distributions to defendants in 1989, (4) that a genuine issue of material factual remains regarding whether paragraph 12(a)(iv) of the Red Hawk Agreement of Limited Partnership was violated by the cash distributions to defendants in 1989, and (5) that whether the Red Hawk Limited Partnership Certificate was violated and whether such a violation falls under N.J.Stat. Ann. § 42:2A–46 has not been adequately briefed and so will not be addressed at this time. As a result, the motion by defendants for summary judgment will be denied and the cross-motion by plaintiff for summary judgment will also be denied.

An appropriate Order follows.

### ORDER

**AND NOW,** this 24th day of October, 1995, upon consideration of the motion by defendants for summary judgment (Document No. 27), the cross-motion by plaintiff Henkels & McCoy, Inc. for summary judgment (Document No. 30), the reply brief by defendants thereto, the reply brief of plaintiff thereto, and the pleadings, depositions, answers to interrogatories, admissions on file, affidavits, and other discovery of record, having made the following findings of fact and conclusions of law for the reasons stated in the foregoing memorandum:

1. The claim by plaintiff is not precluded by the entire controversy doctrine adopted by the Supreme Court of New Jersey;

2. Plaintiff has standing under N.J.Stat. Ann. § 42:2A–46 to bring its instant claim;

3. The cash distributions made by Red Hawk to defendants in 1989 did not violate paragraph 12(a)(i) of the Red Hawk Agreement of Limited Partnership; and

4. A genuine issue of material fact exists regarding whether the cash distributions made by Red Hawk to defendants in 1989 violated paragraph 12(a)(iv) of the Red Hawk Agreement of Limited Partnership,

it is hereby **ORDERED,** that the motion by defendants for summary judgment and the cross-motion by plaintiff for summary judgment are **DENIED.**