## State of Vermont v. Thomas J. O'Brien

[609 A.2d 981]

No. 91-207

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed April 3, 1992

*William Sorrell*, Chittenden County State's Attorney, and *Pamela Hall Johnson*, Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

*Jarvis & Kaplan*, Burlington, for Defendant-Appellant.

**Dooley, J.** Defendant's motor vehicle operator's license was suspended pursuant to the Vermont administrative suspension law, 23 V.S.A. § 1205. Although he uses a scattergun approach to this appeal, we can reduce the issues he raises to three: (1) the administrative suspension proceeding is essentially criminal and so requires the procedural trappings of a criminal trial; (2) this Court's implementation of the administrative suspension proceeding through the procedures of D.C.C.R. 80.5 improperly impinges on the powers of the Legislature; and (3) the expert testimony in this case was admitted without a proper foundation. We affirm.

Defendant was stopped for driving under the influence (DUI) on February 5, 1991. He was asked to, and did, take a breath test. When the results showed a blood-alcohol content of 0.275%, he was charged with DUI and notified, on February 15, 1991, of the State's intention to suspend his operator's license. 23 V.S.A. § 1205(c). He requested a hearing in district court. *Id.* § 1205(e), (f). A preliminary hearing was held on March 6, 1991, and a final hearing on April 24, 1991. Based in part on affidavits filed by the issuing officer and the state chemist, the trial court

found in favor of the State and sent notice of suspension to the Commissioner of Motor Vehicles. *Id.* § 1205(h).

While defendant argues that the procedures used violate the Vermont and federal constitutions and the rules of evidence, he does not directly attack the conclusion of the trial court. Defendant's first argument boils down to whether the license suspension proceeding is civil or criminal for purposes of the relevant procedural safeguards. There is no question that, were the proceeding criminal, it would be unconstitutional, because it does not provide a jury trial, afford confrontation of witnesses or require proof beyond a reasonable doubt.

The claims defendant raises are largely foreclosed by our recent decision in *State v. Strong*, 158 Vt. 56, 605 A.2d 510 (1992). In *Strong*, we held that the imposition of a criminal penalty in a DUI prosecution, following a civil license suspension, did not violate the double jeopardy proscription of the Fifth Amendment to the United States Constitution. We first held that the license suspension is not a punishment for purposes of the Fifth Amendment because the statute serves "the rational remedial purpose of protecting public safety by quickly removing potentially dangerous drivers from the roads." *Id.* at 61, 605 A.2d at 513. We then held that defendant had not been twice prosecuted for the same offense because the administrative suspension proceeding "is a civil proceeding, not a criminal prosecution." *Id.* at 63, 605 A.2d at 514.

Without repeating all of the analysis of *Strong*, we see no reason to distinguish among the various procedural safeguards defendant seeks in determining whether the license suspension proceeding is criminal. We hold that it is not criminal and defendant is not entitled to a jury trial, appointed counsel, protection against self-incrimination, proof beyond a reasonable doubt or confrontation of witnesses as protected by the Sixth Amendment, as those protections apply to criminal proceedings.[1] Nor, for the same reason, is defendant entitled to the

---

[1] In his argument, defendant relies on a decision of the Oregon Supreme Court holding that Oregon's civil DUI law involved a criminal proceeding, despite the Legislature's label, and required the use of criminal procedures. See *Brown v. Multnomah County Dist. Ct.*, 280 Or. 95, 109, 570 P.2d 52, 60 (1977); see also *State v. Freeman*, 487 A.2d 1175, 1179 (Me. 1985) (similar

protections accorded to criminal defendants by the Vermont Constitution.

In his brief defendant argues generally that the administrative license suspension proceeding denies him due process of law even if not of a criminal nature, under the United States Supreme Court's holding and analysis in *Matthews v. Eldridge*, 424 U.S. 319 (1976). At oral argument, however, counsel agreed that defendant's due process claim is based entirely on the lack of procedural safeguards applicable to a criminal prosecution because of the criminal nature of the proceeding. We therefore need not address whether specific procedural protections, beyond those statutorily required, may be required generally or in a specific case to meet requirements of the due process clause of the Fourteenth Amendment or Chapter I, Article 4 of the Vermont Constitution even though this is a civil proceeding.

■ Defendant's second challenge is that this Court's implementation of the administrative license suspension procedure through D.C.C.R. 80.5 infringes on legislative power. We fail to see the relevance of this argument to defendant's circumstances since he complains about no specific provision of the rule. In the absence of some effect of the alleged constitutional

---

ruling with respect to comparable Maine statute). *Brown* and the cases that follow its approach involve a different statutory scheme from that present here. The *Brown* statute established a civil penalty scheme, including fines, for the least serious DUI cases. The higher penalties, following a normal criminal prosecution, were imposed for the most serious offenses. The court held that the Legislature's attempt to decriminalize the less serious offenses did not change the essential nature of the proceeding so that the constitutional procedures applicable to criminal cases had to be used. 280 Or. at 110–11, 570 P.2d at 61.

Oregon has since enacted a scheme similar to that of Vermont, separating the license suspension proceeding from the criminal prosecution. The Oregon courts have upheld the administrative license suspension proceeding as civil in nature. See *Carney v. Motor Vehicles Div.*, 100 Or. App. 533, 536, 786 P.2d 1319, 1320 (1990) (suspension proceeding "cannot result in criminal sanctions and does not implicate criminal constitutional provisions"). All other states with administrative suspension proceedings similar to those in Vermont have upheld them against challenges that they are flawed for not including the constitutional protections of criminal proceedings. See, e.g., *People v. McKnight*, 200 Colo. 486, 493, 617 P.2d 1178, 1183 (1980); *People v. Gerke*, 123 Ill. 2d 85, 92–95, 525 N.E.2d 68, 71–73 (1988); *Henry v. Edmisten*, 315 N.C. 474, 495–96, 340 S.E.2d 720, 734 (1986); *Holte v. North Dakota State Highway Comm'r*, 436 N.W.2d 250, 252 (N.D. 1989).

violation on defendant, he is in no position to complain about it. See *In re Vermont Supreme Court Administrative Directive No. 17*, 154 Vt. 392, 398–99, 579 A.2d 1036, 1039 (1990).

In any event, there is no separation of powers violation. Chapter II, § 37 of the Vermont Constitution directs this Court to "make and promulgate rules governing practice and procedure in civil and criminal cases in all courts," subject to revision by the Legislature. Under this provision, the power to establish practice and procedure is shared, with the Judiciary having the primary responsibility in the area. See Dooley, *The Regulation of the Practice of Law, Practice and Procedure, and Court Administration in Vermont—Judicial or Legislative Power?*, 8 Vt. L. Rev. 211, 241–52 (1983). D.C.C.R. 80.5 is a procedural rule authorized by the Vermont Constitution.[2] Because the constitution itself establishes the judicial power for rule promulgation, there can be no violation of the separation of powers established by Chapter II, § 5.

Defendant's third argument contests the admission of the affidavit of the State's chemist showing defendant's blood-alcohol test results. He contends that the evidence is inadmissible because the calculation used to derive the percentage of alcohol in defendant's blood from the breath test result relied upon the characteristics of a "general pool of individuals" rather than those of defendant.[3] He asserts that this use constituted an opinion based on speculation and so violated V.R.E. 703. See, e.g., *Jackson v. True Temper Corp.*, 151 Vt. 592, 595, 563 A.2d 621, 622–23 (1989) (opinions may not be based on speculation as to what underlying facts will show).

---

[2] It is also authorized by statute, 23 V.S.A. § 1205(p), indicating that the Legislature failed to see any incursion on its powers.

[3] The Legislature has eliminated the basis for this argument in the 1991 amendments to the statute. The threshold test result that triggers the statute is defined in terms of the operator's "alcohol concentration." 23 V.S.A. § 1205(h). The term "alcohol concentration" is separately defined, depending upon whether breath or blood is being measured. *Id.* § 1200(1). For breath, alcohol concentration is defined as the number of grams of alcohol per 210 liters of breath. In effect, the Legislature has defined a statutory conversion ratio between blood-alcohol and breath-alcohol levels, applicable in all cases.

█ Because it is based on a rule of evidence, defendant's argument has no application to administrative license suspension proceedings, as they are not governed by the rules of evidence. See D.C.C.R. 80.5(f) (hearings shall be conducted pursuant to small claims rule, D.C.C.R. 80.3(i)); D.C.C.R. 80.3(i) (except for the rules with respect to privilege, Vermont Rules of Evidence do not apply). In any event, this precise argument was rejected in *State v. Blake*, 151 Vt. 235, 237, 559 A.2d 676, 677–78 (1989). Even in criminal proceedings, the criticisms defendant levels at the expert testimony go to the weight and not the admissibility of the evidence.

*Affirmed.*