## State of Vermont v. Robert Pollander

[706 A.2d 1359]

No. 96-387

Present: Amestoy, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed December 5, 1997

*Lee Dow*, Lamoille County Deputy State's Attorney, Hyde Park, for Plaintiff-Appellee.

*David G. Miller* of *Brown, Cahill, Gawne & Miller*, St. Albans, for Defendant-Appellant.

**Amestoy, C.J.** Defendant Robert Pollander appeals the Lamoille District Court's denial of his motion to dismiss in a civil license-

suspension proceeding, and challenges adverse findings by the court. Defendant argues that (1) the issue of his blood-alcohol content (BAC) on the night of his arrest was resolved in his favor by an earlier criminal jury verdict and was thus precluded from reconsideration at the civil suspension hearing; and (2) the district court erred by failing to consider defendant's necessity defense. We affirm.

Defendant was stopped by a law enforcement officer while driving in Morristown in August 1995 and processed for driving under the influence (DUI). Test results revealed defendant's BAC to be over the legal limit of .08%. Defendant was subsequently arraigned on criminal DUI charges. The State also moved to suspend defendant's driver's license in a civil action pursuant to 23 V.S.A. § 1205(a). Defendant requested a civil suspension hearing in district court. See 23 V.S.A. § 1205(f).

In response to various motions filed by defendant, the district court continued the civil suspension proceeding until after the criminal DUI trial was held in July 1996. At the criminal trial, defendant attacked the validity of the State's evidence concerning his BAC and presented the affirmative defense of necessity. As a basis for his necessity defense, defendant stated that he was driving in his car to intervene in a friend's potential suicide and that any alleged violation of the DUI statute was necessary to save a human life.[1] The jury returned a general verdict of not guilty. It did not identify the grounds upon which the verdict rested.

The civil suspension hearing was held in August 1996. Central to the State's case was evidence that defendant's BAC was .08% or more on the night of his arrest. Defendant argued that the State should have been precluded from relitigating the issue of his BAC because that issue had been resolved in his favor at the criminal trial. Defendant also sought to introduce his defense of necessity. The court ruled that the State should not be precluded from relitigating the BAC issue and denied defendant's request to introduce the necessity defense. The court made the findings required under the civil suspension statute, see id. § 1205(h), and entered judgment for the State. Defendant appeals.

---

[1] The dissent's contention that we have minimized the urgency of defendant's situation is belied by the facts. Defendant's friend did not indicate that she intended to take her own life when she called that evening, and defendant initially planned to visit her home the next morning. Moreover, defendant consumed two beers *after* the phone call, and concedes that his wife, who had not consumed alcohol that evening, was available to drive defendant to his friend's house.

# I.

Defendant first argues that the criminal trial verdict precludes the State from relitigating at the civil suspension hearing whether defendant's BAC was .08% or more on the night of his arrest.[2] Defendant contends that his acquittal at the criminal trial establishes a jury finding that his BAC was not .08% or more, and therefore, the issue of defendant's BAC should not have been considered at the summary suspension hearing.

We note initially that the applicability of collateral estoppel to a given set of facts is a question of law. See, e.g., *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 571 (1951). We thus review de novo the district court's decision on this matter. Collateral estoppel, or issue preclusion, "bars a party from relitigating an issue decided in a previous action." *In re J.R.*, 164 Vt. 267, 269, 668 A.2d 670, 673 (1995). Before precluding relitigation of an issue, a court must "examine the first action and the treatment the issue received in it." J. Cound, et al., Civil Procedure 1228 (6th ed. 1993). This Court looks to the five elements set forth in *Trepanier v. Getting Organized, Inc.*, 155 Vt. 259, 265, 583 A.2d 583, 587 (1990), and finds issue preclusion when:

> (1) preclusion is asserted against one who was a party or in privity with a party in the earlier action; (2) the issue was resolved by a final judgment on the merits; (3) the issue is the same as the one raised in the later action; (4) there was a full and fair opportunity to litigate the issue in the earlier action; and (5) applying preclusion in the later action is fair.

See also *Berlin Convalescent Ctr., Inc. v. Stoneman*, 159 Vt. 53, 56, 615 A.2d 141, 144 (1992) (applying *Trepanier* elements). For purposes of analysis, we can assume that the first, third, and fourth *Trepanier* factors are satisfied: the State was a party to both actions, defendant's

---

[2] Although defendant loosely uses the term res judicata, his argument is more accurately characterized as one of issue preclusion, sometimes referred to as collateral estoppel. See *State v. Dann*, 167 Vt. 119, 124, 702 A.2d 105, 109 (1997). Res judicata or claim preclusion "will bar a subsequent action only if the court issued a final judgment in the previous action, and 'the parties, subject matter and causes of action are identical or substantially identical.'" *Id.* at 124-25, 702 A.2d at 109 (quoting *Berisha v. Hardy*, 144 Vt. 136, 138, 474 A.2d 90, 91 (1984)). The more limited doctrine of issue preclusion, or collateral estoppel, estops a party from relitigating "those issues necessarily and essentially determined" in prior litigation. *Land Investment, Inc. v. Battleground Assocs.*, 138 Vt. 316, 326, 415 A.2d 753, 759 (1980). In defendant's case, the criminal prosecution and subsequent civil suspension proceeding are not identical causes of action, and thus res judicata is not available.

BAC was an issue in both proceedings, and there was a full and fair opportunity to litigate the BAC issue in the earlier criminal trial. Defendant has not established, however, that the second and fifth *Trepanier* factors have been satisfied.

The second *Trepanier* factor requires that the issue be "resolved by a final judgment on the merits" in the earlier proceeding. 155 Vt. at 265, 583 A.2d at 587. A related precept is that preclusion apply only to "issues necessarily and essentially determined in a prior action." *Berisha v. Hardy*, 144 Vt. 136, 138, 474 A.2d 90, 91 (1984); see also *American Trucking Ass'ns v. Conway*, 152 Vt. 363, 369, 566 A.2d 1323, 1327 (1989) (issue preclusion appropriate only "where that issue was necessary to the resolution of the [previous] action").

A party seeking preclusion has the burden of introducing "'a sufficient record of the prior proceeding to enable the trial court to pinpoint the exact issues previously litigated.'" *Ianelli v. Standish*, 156 Vt. 386, 388, 592 A.2d 901, 902 (1991) (quoting *United States v. Lasky*, 600 F.2d 765, 769 (9th Cir. 1979)). In *Ianelli*, this Court upheld the trial court's decision to deny preclusion because the party seeking preclusion had failed to show that the relevant issue was necessary to the earlier jury verdict. *Id.*; see also *Dowling v. United States*, 493 U.S. 342, 350 (1990) (where party seeks to preclude relitigation of issue based on previous general verdict acquittal, court must examine record of prior proceeding to determine if rational jury could have grounded its verdict on issue other than that which party seeks to foreclose from consideration). It is not sufficient for a party to assert that an issue *could* have been the basis of a prior judgment. The Restatement (Second) of Judgments explains: "If a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone." Restatement (Second) of Judgments § 27 cmt. i (1982). Applying the rule in *Ianelli* to this case, we find that defendant has not satisfied his burden.

In the criminal trial, defendant attacked the State's evidence that he drove while his BAC was .08% or more. Defendant also presented the affirmative defense of necessity based on his friend's alleged suicide attempt. Accordingly, the trial judge instructed the jury that a not guilty verdict would follow from *either* of two jury findings: either (1) that defendant's BAC was under the legal limit; or (2) that, regardless of defendant's BAC, there was a need that defendant drive

to his friend's house the night of the arrest. Thus the jury could rationally acquit defendant without reaching a conclusion on his BAC.

The jury at defendant's criminal DUI trial returned a general verdict of not guilty, but did not specify the grounds upon which the verdict stood. Because defendant has not established that determination of his BAC was necessary and essential to the criminal verdict, as required under the second *Trepanier* factor, the trial court was correct to allow relitigation of the BAC issue at the civil suspension proceeding.

Defendant has also failed to satisfy the fifth element, which requires that "applying preclusion in the later action is fair." *Trepanier*, 155 Vt. at 265, 583 A.2d at 587. Relevant considerations for applying this part of the test include "the legal standards and burdens employed in each action." *Id.*; see also *In re J.R.*, 164 Vt. at 269, 668 A.2d at 673 (important factor to consider in issue preclusion is degree of proof required in each action).

Defendant contends that this is a case of "crossover estoppel" where application of issue preclusion is appropriate because the State had a full and fair opportunity to litigate the issue of defendant's BAC in the earlier criminal trial. Crossover estoppel occurs where an issue adjudicated in a civil proceeding is claimed to be precluded in a subsequent criminal proceeding. *State v. Stearns*, 159 Vt. 266, 268, 617 A.2d 140, 141 (1992). We have noted that although cases of crossover estoppel are relatively rare, there is no barrier to the application of the doctrine as long as the standards of proof are the same and no right of jury trial is attached. *Id.*

Here, defendant argues that the State's failure at the criminal trial to prove beyond a reasonable doubt that his BAC was .08% or more precludes the State, at the suspension hearing, from proving by a preponderance of the evidence that defendant's BAC was above the legal limit. See 23 V.S.A. § 1205(i) (State has burden of proof by preponderance of evidence at civil suspension hearing). Defendant ignores that what cannot be proven beyond a reasonable doubt may still be proven by a preponderance of the evidence. See *State v. VanDusen*, 166 Vt. 240, 245, 691 A.2d 1053, 1055 (1997) (it is not inconsistent that State could not prove issue at criminal trial under beyond-reasonable-doubt standard but could at sentencing hearing governed by preponderance-of-evidence standard); *Donley v. Donley*, 165 Vt. 619, 620, 686 A.2d 943, 945-46 (1996) (acquittal of domestic assault charges under beyond-reasonable-doubt standard does not

preclude court, under preponderance-of-evidence standard, from extending abuse-prevention order, even though same conduct led to both decisions); *Cook v. Oberly,* 459 A.2d 535, 540 (Del. Ch. 1983) (acquittal under criminal DUI statute, which requires State to prove guilt beyond reasonable doubt, is not inconsistent with adverse verdict under civil license-revocation statute, which requires State to prove case only by preponderance of evidence). "[A]n acquittal in a criminal case does not preclude the Government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof." *Dowling,* 493 U.S. at 349; see also Restatement (Second) of Judgments § 28(4) (1982) (relitigation not precluded where party against whom preclusion is sought had significantly heavier burden of persuasion with respect to issue in initial action than in subsequent action).

## II.

Defendant next argues that the trial court erred in denying him an opportunity at the civil suspension hearing to present the affirmative defense of necessity based upon defendant's purported need to intervene in a friend's suicide attempt. Defendant acknowledges that the statute limiting the issues to be heard at the license-suspension hearing does not recognize the defense of necessity.[3] Defendant concedes further that he makes no constitutional claim,[4] but nevertheless urges that we create a public policy exception based on recognition of circumstances where a violation of the law is justified. We decline to do so for the reasons set forth below.

The summary suspension system created by the Legislature in 23 V.S.A. § 1205 serves the legitimate purpose of protecting public

---

[3] 23 V.S.A. § 1205(g) provides that the issues at hearing shall be limited to the following: (1) whether the law enforcement officer had reasonable grounds to believe that a person was operating a vehicle in violation of the DUI statute, see 23 V.S.A. § 1201; (2) whether the officer informed the person of his or her rights and the consequences of taking or refusing the evidentiary test; (3) whether the person refused to take the test; (4) whether the test was taken and the results indicated a BAC of .08% or more, the testing methods were reliable, and the results accurate; and (5) whether the statutory requirements of § 1202 were complied with regarding consent to the taking of BAC tests.

[4] Whether an issue not among those listed in 23 V.S.A. § 1205(g) may implicate due process rights in some other specific case is not before us. See *State v. O'Brien,* 158 Vt. 275, 277-78, 609 A.2d 981, 982-83 (1992) (due process associated with criminal proceedings not applicable to license-suspension hearing; whether specific procedural safeguards beyond those statutorily required may be required generally or in specific case need not be addressed).

safety by quickly removing "potentially dangerous drivers from the road." *State v. Strong*, 158 Vt. 56, 61, 605 A.2d 510, 513 (1992). A state retains "great leeway in adopting summary procedures to protect public health and safety." *Mackey v. Montrym*, 443 U.S. 1, 17 (1979). The Vermont civil suspension system is intended to work in a "speedy and summary fashion." *Stearns*, 159 Vt. at 271, 617 A.2d at 142; see 23 V.S.A. § 1205(i) (hearings "shall be summary proceedings").

■ The necessity defense "is one that partakes of the classic defense of 'confession and avoidance.' . . . It admits the criminal act, but claims justification." *State v. Warshow*, 138 Vt. 22, 24, 410 A.2d 1000, 1001 (1979). This Court has recognized the necessity defense in criminal cases, see, e.g., *State v. Shotton*, 142 Vt. 558, 561, 458 A.2d 1105, 1106 (1983), and in tort litigation. See, e.g., *Ploof v. Putnam*, 81 Vt. 471, 475, 71 A. 188, 189 (1908). Our recognition of the necessity defense in the criminal and tort settings emanates not from any state or federal constitutional imperative but rather from the common law. See *Warshow*, 138 Vt. at 26-27, 410 A.2d at 1003 (Hill, J., concurring); *Zal v. Steppe*, 968 F.2d 924, 929 (9th Cir. 1992) (court not persuaded that constitutional right to present necessity defense exists); *State v. Dorsey*, 395 A.2d 855, 857 (N.H. 1978) (defendant has no constitutional or statutory right to have necessity defense considered by jury).

■ The Legislature, therefore, is free to determine whether a necessity defense is an issue to be considered in a civil suspension hearing. Cf. *State v. Stewart*, 140 Vt. 389, 400, 438 A.2d 671, 676 (1981) (Legislature not bound by common law); *State v. Messier*, 145 Vt. 622, 628, 497 A.2d 740, 743 (1985) (definition of circumstances under which exculpatory or mitigating matters will be recognized is within purview of Legislature). Accordingly, this Court may consider whether to permit a necessity defense in the civil suspension setting only if the Legislature has left the issue unresolved. See *Warshow*, 138 Vt. at 27, 410 A.2d at 1003 (Hill, J., concurring) (court's determination of availability of necessity defense is precluded when there has been deliberate legislative decision).

■ ■ In interpreting a statute, we must examine the plain meaning of its language "in light of the statute's legislative purpose." *Lubinsky v. Fair Haven Zoning Bd.*, 148 Vt. 47, 49, 527 A.2d 227, 228 (1986). The plain language of 23 V.S.A. § 1205(g) indicates the Legislature's intent to limit the issues that may be presented at a civil suspension hearing to those enumerated in the statute. Excluding the

necessity defense and other affirmative defenses from among the issues to be litigated serves the goals of the statute by minimizing procedural delay. Our analysis need not proceed further. "If that plain language resolves the conflict without doing violence to the legislative scheme, there is no need to go further, always bearing in mind that the paramount function of the court is to give effect to the legislative intent." *Id.* We agree with the district court's decision to bar a defense to the civil suspension that was not provided in the statute. We thus need not address the merits of the defense itself.

▮ Defendant presents a final argument that the trial court should have dismissed the civil suspension because conducting the proceeding a year after the original DUI processing undermines the statutory objective of a speedy license-suspension process. Not only does defendant not show how such delay prejudiced him, but he requested the continuances that effectuated the delay. Defendant's argument is therefore without merit.

*Affirmed.*

**Morse, J.,** dissenting. Consider these facts: Jackie is a young woman who has suffered for years from severe depression and post-traumatic stress disorder resulting from beatings by her former husband. On several occasions she has attempted suicide by taking drug overdoses or slashing her arms and legs. To deal with future emergencies, Jackie and her treating psychiatrist have established a "support list" made up of her therapist and five or six of Jackie's friends whom she can call day or night if she is ever in trouble.

One such evening occurs in early August 1995. She had been diagnosed earlier that day with breast cancer. Her diabetes had been getting worse for several days. Her former husband had just paid her a visit. It seemed to Jackie as though "everything [had come] to a head on that day" and that she simply "couldn't cope." She called her therapist. He was out of town. She tried several other people on her support list. They were unreachable. Finally, at midnight, Jackie reached her old friend and employer, Robby Pollander, who was also a member of the support team.

Pollander could tell from her voice that Jackie was "in trouble." Indeed, he "felt that Jackie's life was at risk." Taking his dog with him for company, he started to drive to Jackie's house in Lyndonville. Although he had consumed several beers, he didn't believe that his ability to drive was impaired. Nevertheless, he was stopped en route by a police officer who had observed him rapidly accelerate from forty

to sixty and then back to forty miles per hour in a fifty mile per hour zone. The officer smelled alcohol on Pollander's breath and transported him to the station. Once there he declined the assistance of a lawyer and was administered a breath test. It registered over the legal limit of .08 percent.

When Pollander ultimately went to Jackie's house, he found her conscious but in a seemingly "blank" state. Suddenly she went into convulsions and fell to the floor. Pollander called 911 and an emergency medical team arrived shortly thereafter. One member of the EMT told him that his quick action had probably saved Jackie's life.

Pollander was later tried on criminal DUI (driving under the influence) charges. Jackie, the arresting officer, and Pollander himself all provided undisputed testimony at trial concerning the events outlined above. The jury returned a verdict of not guilty. In a subsequent administrative license-suspension hearing, however, the trial court refused to permit Pollander to introduce the same evidence, found that all of the elements of the offense of DUI had been established by a preponderance of the evidence, and entered judgment for the State.

These are the real, undisputed facts of this case. Yet one would never know from reading the Court's opinion the injustice this matter poses. Indeed, it is the Court's failure to focus on the facts that leads, in my view, to its erroneous conclusion that Pollander's purpose in driving on the evening in question was irrelevant to his license suspension. Quite to the contrary, there is virtually no evidence that the Legislature, in providing for administrative suspensions, intended to deprive an individual of the traditional, common law defense of "necessity," the principle that a violation of law may be justified to serve a greater public interest, in this case to preserve a human life. See *State v. Warshow*, 138 Vt. 22, 27, 410 A.2d 1000, 1003 (1979) (Hill, J., concurring) (necessity defense recognizes that there are circumstances "where the value protected by the law is eclipsed by a superseding value, and that it would be inappropriate and unjust to apply the usual criminal rule"). Accordingly, I respectfully dissent.*

---

* Contrary to the Court's assertion, the urgency confronting defendant was clear and unambiguous. It is true, as the Court observes, that Jackie did not *expressly* state that she intended to kill herself. I was not aware, however, that such a statement was a necessary precondition to suicide. When one receives a telephone call from a friend who is distraught and who has twice previously attempted suicide, it is not unreasonable to infer that she may try again. Indeed, the support list was designed precisely for these circumstances. The Court also notes that defendant did not immediately decide to visit

The Court's conclusion that evidence of Pollander's purpose in driving on the night in question was properly excluded rests upon its interpretation of 23 V.S.A. § 1205(g). That section provides that "[t]he issues at the [suspension] hearing shall be limited to the following . . . ." The statute then sets forth the five elements that the State must prove by a preponderance of the evidence: (1) whether the officer had reasonable grounds to believe the person was operating or in control of a vehicle; (2) whether the officer informed the person of the consequences of taking or refusing to take the alcohol test; (3) whether the person refused to permit the test, or (4) whether the test was taken and the results showed an alcohol concentration of .08 percent or higher; and (5) whether the person was properly advised of the rights set forth in § 1202.

Noting that the necessity defense is not among the issues listed in § 1205(g), the Court concludes that the Legislature must have intended to exclude it, and therefore that Pollander's evidence did not matter. The Court's reasoning is mistaken in several respects. First, it misapplies the interpretive principle of "expressio unius est exclusio alterius" (the expression of one thing is the exclusion of another). See *In re Verburg*, 159 Vt. 161, 165, 616 A.2d 237, 239 (1992). As one court has explained, the "well established rule of statutory construction provides that the expression of one or more items *of a class* indicates an intent to exclude all items of the *same class* which are not expressed." *Pima County v. Heinfeld*, 654 P.2d 281, 282 (Ariz. 1982) (emphasis added); see also *In re Downer's Estate*, 101 Vt. 167, 177, 142 A. 78, 82 (1928) ("This maxim properly applies only when in the natural association of ideas in the mind of the reader that which is expressed is so set over by way of strong contrast to that which is omitted . . . ."). Each of the five issues set forth in § 1205(g) represents an *element* that the State must prove by a preponderance of the evidence. The statute makes no mention whatsoever of any *defenses* that may be asserted at the hearing. Thus, the only inference that we may reasonably draw from the maxim is that the Legislature

Jackie that evening. The Court fails to mention, however, that defendant changed his mind after reflecting on Jackie's "two previous attempts to take her life and how distraught she sounded on the telephone." Subsequent events proved defendant's concern to be well founded. Nor, finally, was it necessarily unreasonable for defendant to decline to bring his wife on such an urgent mission, at 2:00 in the morning, particularly when he considered it his personal responsibility. Certainly a jury was entitled to hear the evidence and decide for itself whether defendant's actions were necessary under the circumstances.

intended the factors set forth in § 1205(g) to represent the entirety of the State's burden.

In addition, we have repeatedly "emphasized that the precept [of expressio unius] . . . is only one aid to . . . interpretation and must give way to others in appropriate cases." *Verburg*, 159 Vt. at 166, 616 A.2d at 239; see also *Oxx v. Department of Taxes*, 159 Vt. 371, 375, 618 A.2d 1321, 1324 (1992) (The maxim "is relatively weak among rules of statutory construction."); *Clymer v. Webster*, 156 Vt. 614, 625, 596 A.2d 905, 912 (1991) (maxim of expressio unius should be applied with caution and is not conclusive as to statute's meaning). Indeed, courts and commentators alike have noted the weakness of a maxim premised on the assumption that all omissions in legislative drafting are deliberate. As one federal court has observed, "[t]his maxim is increasingly considered unreliable . . . for it stands on the faulty premise that all possible alternative or supplemental provisions were necessarily considered and rejected by the legislative draftsmen." *National Petroleum Refiners Ass'n v. Federal Trade Comm'n*, 482 F.2d 672, 676 (D.C. Cir. 1973); see also *Director v. Bethlehem Mines Corp.*, 669 F.2d 187, 197 (4th Cir. 1982) ("The maxim is to be applied with great caution and is recognized as unreliable."); R. Posner, *Statutory Interpretation - in the Classroom and in the Courtroom*, 50 U. Chi. L. Rev. 800, 813 (1983) (canon based upon assumption of "legislative omniscience . . . is not helpful"). The State has not adduced, nor has research uncovered, any evidence in the legislative history of § 1205(g) that the Legislature even considered, much less resolved to abrogate, any affirmative defenses.

Caution in applying the maxim is particularly advised when the result is to eliminate a longstanding common law doctrine such as the necessity defense. See *State v. Hastings*, 801 P.2d 563, 564 (Idaho 1990) ("Necessity as a defense has a long history," appearing in early English cases); *State v. Tate*, 505 A.2d 941, 948 (N.J. 1986) (Handler, J., dissenting) ("provision for necessity-justification encapsulates a criminal defense that has long been recognized at common law"). As noted, the doctrine "proceeds from the appreciation that, as a matter of public policy, there are circumstances where the value protected by the law is eclipsed by a superseding value." *Warshow*, 138 Vt. at 27, 410 A.2d at 1003 (Hill, J., concurring).

The defense has been recognized in a variety of circumstances, not all involving heinous offenses. In *State v. Messler*, 562 A.2d 1138, 1140-42 (Conn. App. Ct. 1989), for example, the court held that a defendant charged with speeding had the right to present the defense

of necessity where he claimed that he had sped up to pass other cars and thereby allow a police officer in pursuit of another car to pass him. And in a case closely on point, this Court has held that a defendant was entitled to raise the defense to a charge of driving under the influence where she claimed that she had been assaulted and was driving herself to the hospital. See *State v. Shotton*, 142 Vt. 558, 561-62, 458 A.2d 1105, 1105-06 (1983). We have also recognized that the defense may be raised in a civil proceeding, holding that a trespass may be justified by the trespasser's immediate need to seek shelter from a sudden storm. See *Ploof v. Putnam*, 81 Vt. 471, 475, 71 A. 188, 189 (1908). As the Court in *Ploof* observed, "[t]his doctrine of necessity applies with special force to the preservation of human life." *Id.*

We have repeatedly stated, moreover, that principles deeply ingrained in the common law will not be overturned by statute absent clear and unambiguous language to that effect. See *Swett v. Haig's, Inc.*, 164 Vt. 1, 5, 663 A.2d 930, 932 (1995) ("Words of doubtful meaning do not change common law rules; the intent to do so must be expressed in clear and unambiguous language."); *Estate of Kelley v. Mogul's, Inc.*, 160 Vt. 531, 533, 632 A.2d 360, 362 (1993) ("'[R]ules of the common law are not to be changed by doubtful implication, nor overturned except by clear and unambiguous language.'") (quoting *E.B. & A.C. Whiting Co. v. City of Burlington*, 106 Vt. 446, 464, 175 A. 35, 44 (1934)).

Because § 1205(g) does not foreclose the time-honored defense of necessity in "clear and unambigous language," I am unable to conclude that the Legislature intended to preempt its use. Indeed, it is extraordinary to believe that the Legislature harbored an intent to deprive defendant of his driver's license for what he did in these circumstances.

Accordingly, I would reverse the judgment of the trial court.