VERMONT SUPERIOR COURT
Franklin Unit
17 Church Street
St. Albans VT 05478
802-524-7993
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 21-CV-02243

---

Timothy Bockus v. Maple Pro, Inc.

---

# DECISION ON PENDING MOTIONS

Plaintiff Timothy Bockus was employed as a district sales manager for Defendant, Maple Pro, Inc. until his termination in 2019. He filed this action alleging unlawful termination (Count I), gender discrimination (Counts II and III), breach of binding obligations in Maple Pro's employee handbook (Count IV), and failure to pay commissions (Count V). Maple Pro has moved for summary judgment on all counts. As part of his response, Mr. Bockus has moved to amend his complaint to assert late payment of some wage obligations. The court denies that motion; it grants Maple Pro's motion in part and denies it in part.

## BACKGROUND

The standard on a motion for summary judgment is familiar. Nevertheless, it bears repeating here, as the parties' papers have created a dense morass of factual assertions through which the court has struggled to find a clear path. Under Rule 56, the initial burden falls on the moving party to show an absence of dispute of material fact. *E.g.*, *Couture v. Trainer*, 2017 VT 73, ¶ 9, 205 Vt. 319 (citing V.R.C.P. 56(a)). When the moving party has made that showing, the burden shifts to the non-moving party; that party may not rest on mere allegations but must come forward with evidence that raises a dispute as to the facts in issue. *E.g.*, *Clayton v. Unsworth*, 2010 VT 84, ¶ 16, 188 Vt. 432 (citing *Alpstetten Ass'n, Inc. v. Kelly*, 137 Vt. 508, 514 (1979)). Where that party bears the burden of proof on an issue, if fairly challenged by the motion papers, it must come forward with evidence sufficient to meet its burden of proof on that issue. *E.g.*, *Burgess v. Lamoille Housing P'Ship*, 2016 VT 31, ¶ 17, 201 Vt. 450 (citing *Poplaski v. Lamphere*, 152 Vt. 251, 254–55 (1989)). The evidence, on either side, must be admissible. *See* V.R.C.P. 56(c)(6); *Gross v. Turner*, 2018 VT 80, ¶ 8, 208 Vt. 112 ("Once a claim is challenged by a properly supported motion for summary judgment, the nonmoving party . . . must come forward with admissible evidence to raise a dispute regarding the facts."). The court must give the non-moving party the benefit of all reasonable doubts and inferences. *Carr v.*

Decision on Pending Motions
21-CV-02243 Timothy Bockus v. Maple Pro, Inc.

Page **1** of **12**

*Peerless Ins. Co.*, 168 Vt. 465, 476 (1998). Thus, "[i]n determining the existence of genuine issues of material fact, courts must accept as true the allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material." *Gates v. Mack Molding Co.*, 2022 VT 24, ¶ 13, 216 Vt. 379 (quotation omitted).

Viewing the parties' submissions through this lens, the following narrative emerges. Maple Pro is a Vermont company that sells sugaring supplies and equipment. On March 20, 2006, it hired Mr. Bockus as a district sales manager. For the period at issue here, Maple Pro paid Mr. Bockus on a salary-plus-commission basis. In addition to his base salary, he earned a 1% commission on all sales Maple Pro made to one account—Forest Farmers—plus a 2% commission on any sales it made to any other customers in New York.

Maple Pro coded sales to most New York customers under Mr. Bockus's personal sales code, TB4, thus identifying them as earning a 2% commission and directing that commission to him. Sales to Forest Farmers, worth a 1% commission, were coded using 889, which the parties call the "house code." In theory, there should have been no New York sales coded to 889 except those to Forest Farmers; all other New York sales should have fallen under the TB4 code.

In November 2018, a colleague in Maple Pro's Human Resources Department advised Mr. Bockus that some New York sales, other than to Forest Farmers, were improperly being coded 889, thus depriving him of commissions he should have been receiving. In response, Mr. Bockus sent an email to Vallier Chabot, the son of the owner and general manager, Martin Chabot, entitled "Sales Corruption at CDLUSA - $$$$." In this email, Mr. Bockus asserted that he was not being paid commissions properly. Martin Chabot responded directly. He stated that he did not appreciate the allegations of corruption. He suggested further that if Mr. Bockus felt there were any mistakes with his commissions, he should take it up with his manager, or directly with Mr. Chabot, and they would correct it. Mr. Chabot's response also stated, "If this is what you think that there is corruption at CDL maybe it is time we stop working together. I do not accept a lack of confidence towards the family!" Four months later, in an email dated March 5, 2019, Maple Pro terminated Mr. Bockus's employment. The email explained that Maple Pro had received complaints about inappropriate behavior by Mr. Bockus toward coworkers, and that its investigation had "brought to light a pattern of disrespectful and inappropriate conduct" towards many of his coworkers. This was the first Mr. Bockus had heard of any such investigation.

On August 6, 2021, Mr. Bockus filed suit against Maple Pro in the United States District Court for the District of Vermont. He asserted claims including discrimination on the basis of his gender and

Decision on Pending Motions
21-CV-02243 Timothy Bockus v. Maple Pro, Inc.

Page **2** of **12**

age in violation of Title VII, the Age Discrimination in Employment Act (ADEA), and the Vermont Fair Employment Practices Act, all arising from his termination. Mr. Bockus characterized as gender discrimination Maple Pro's failure to give him notice of the sexual harassment allegations, to talk to him and hear his side of the story, and to investigate fully. The federal court dismissed the gender discrimination claims with prejudice for failure to state a claim. The court concluded, "no facts in the Complaint connect Maple Pro's alleged improper handling of the sexual harassment allegations against [Mr. Bockus], or his ultimate termination, with his gender." *Bockus v. Maple Pro, Inc.*, No. 5:19-cv-00237-gwc, slip op. at 9 (Dec. 17, 2019). Mr. Bockus then sought reconsideration, and the district court denied that motion. Mr. Bockus appealed to the Second Circuit, which affirmed the dismissal. *Bockus v. Maple Pro, Inc.*, 850 F. App'x 48, 52 (2d Cir. 2021). Mr. Bockus then filed this action. More than two years later, he moved to amend the complaint to add a claim for late payment of some wages.

## ANALYSIS

Against this background, the court declines to allow amendment of the complaint. Of the original claims, only Counts I and V survive. The court first addresses the motion to amend, and then each count in turn.

### Motion to Amend

Mr. Bockus's motion to amend seeks to add a new claim asserting that some wages, though paid, were paid late. This claim is entirely different from Count V, the unpaid-wages claim. By Mr. Bockus's own account, he discovered the existence of the alleged lateness on February 22, 2019. Pf's Proposed Amended Compl., ¶ 39 (filed Oct. 23, 2023). Discovery in this case commenced in October 2021, and in May 2023, Maple Pro filed its motion for summary judgment. In response, Mr. Bockus declined to address the merits of Maple Pro's arguments on Count V, asserting instead that after more than two years, discovery on that count was uncompleted. The court rejected that argument and ordered Mr. Bockus to respond on the merits. Three days after that response was due, and three days before the response was filed, Mr. Bockus filed his motion to amend. His only excuse for the extraordinary delay in asserting this claim is "oversight." The court cannot accept this explanation; it concludes instead that the amendment is dilatory and offered in bad faith. Amendment now comes far too late and would be highly disruptive. *See Stratton v. Steele*, 144 Vt. 31, 37 (1984); *Gauthier v. Keurig Green Mountain, Inc.*, 2015 VT 108, ¶ 46, 200 Vt. 125. Moreover, Mr. Bockus has not shown how this amendment escapes the obvious operation of the statute of limitations. *See* 12 V.S.A. § 520 (claims for unpaid wages must be brought within two years of accrual). Thus, the court also rejects the amendment as futile.

Decision on Pending Motions
21-CV-02243 Timothy Bockus v. Maple Pro, Inc.

Page **3** of **12**

## Count I—Retaliatory Termination

Mr. Bockus alleges that he was terminated in response to his complaint about unpaid wages, in violation of 21 V.S.A. 348(a)(1). Maple Pro asserts that it terminated his employment because other employees alleged that he had sexually harassed them. It argues that Mr. Bockus's evidence of retaliation is insufficient to reach a jury.

What has become known as the *McDonnell Douglas* framework applies to Mr. Bockus's claim. *See Gauthier*, 2015 VT 108, ¶ 15 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). First, Mr. Bockus must establish a "prima facia case" of retaliatory termination by demonstrating that: (1) he engaged in a protected activity; (2) Maple Pro knew of that activity; (3) he suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *Id.* ¶ 16. At this step, the burden is "relatively light." *Gallipo v. City of Rutland*, 2005 VT 83, ¶ 15, 178 Vt. 244. Suspicious timing alone can be sufficient to show causation. *Gauthier*, 2015 VT 108, ¶ 19.

If the employee makes out a prima facia case, the burden then shifts to the employer to come forward with a nondiscriminatory reason for the adverse employment action. *Id.* ¶ 20. The burden at this step is merely one of production, not persuasion. *Robertson v. Mylan Laboratories, Inc.,* 2004 VT 15, ¶ 26, 176 Vt. 356. The employer's explanation must, "if taken as true, permit the conclusion that there was a nondiscriminatory reason for the adverse action." *Back v. Hastings on Hudson Union Free Sch. Dist.,* 365 F.3d 107, 123 (2d Cir. 2004).

If the employer meets its burden, the burden returns to the employee to prove, by a preponderance of the evidence, that the reason the employer has offered is a pretext. *Gauthier*, 2015 VT 108, at ¶ 22. On summary judgment, the employee must demonstrate a triable issue as to that matter. An employee may show a triable issue by, for example, proffering evidence that the employer "violated . . . an employee's . . . rights under an employer's established policy" or by pointing to "weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action." *Mellin v. Flood Brook Union Sch. Dist.*, 173 Vt. 202, 212 (2001); *Hammond*, 2023 VT 31, ¶ 34.

Mr. Bockus easily satisfies the first three elements of a prima facia case. His complaining about his wages is clearly protected activity under 21 V.S.A. § 348(a)(1). Maple Pro responded to that complaint the same day. It subsequently terminated Mr. Bockus's employment.

Mr. Bockus has also sufficiently demonstrated a causal relationship between the unpaid wages complaint and his termination. The termination occurred within four months of the complaint, during

Decision on Pending Motions
21-CV-02243 Timothy Bockus v. Maple Pro, Inc.

Page **4** of **12**

which time, Mr. Bockus communicated with the Human Resources colleague who had informed him of the miscoding of some New York sales to get more information about the commissions he believed he was not being paid. He asserts that he understood that she was looking into it. She was then removed from that task by her supervisor, however, and she resigned shortly thereafter, after having a "confrontation with management." Although those events are only vaguely described in the record, a jury could find such evidence suspicious and so a sufficient basis for questioning Maple Pro's asserted motivation for terminating Mr. Bockus.

Maple Pro itself also linked the unpaid wages complaint with possible termination when its owner stated, "If this is what you think that there is corruption at [Maple Pro] maybe it is time we stop working together. I do not accept a lack of confidence towards the family!" Although this statement could be interpreted as commenting on Mr. Bockus's provocative tone rather than the substance of the complaint, particularly when indulging all reasonable inferences in Mr. Bockus's favor, a reasonable finder of fact could determine that it reflects the latter.

Maple Pro's sexual harassment investigation also contributes to the suspiciousness of the circumstances. Terminating a longtime employee for sexual harassment after an investigation of which he was never notified could be thought peculiar, to say the least. A finder of fact certainly could find such circumstances suspicious and potentially pretextual. Altogether, this evidence is sufficient for a prima facie showing of causation.

In its motion papers, Maple Pro points to evidence, including the investigation log and sworn affidavits, showing that in fact there had been allegations of harassment and an investigation. This evidence, it argues, sufficiently demonstrates a nondiscriminatory reason for termination. As noted above, Maple Pro's burden at this step is merely one of production; this evidence clearly satisfies that burden.

The question, then, is whether Mr. Bockus has come forward with sufficient evidence to demonstrate a that Maple Pro's asserted reason for termination was pretextual. As noted above, the timing of the termination and the secrecy surrounding Maple Pro's investigation into the sexual harassment allegations are at least arguably suspicious. That the unpaid wages dispute was not resolved between Mr. Bockus's complaint and his termination at least suggests that the controversy endured during that time. Maple Pro has offered no reasonable explanations for these events; even if it had, that would at best demonstrate a genuine dispute as to the reason for the termination. In short, while the evidence is by no means overwhelming, drawing all inferences in Mr. Bockus's favor, the court concludes that there is enough evidence or retaliation to make this a jury question.

## Counts II and III—Gender Discrimination

Mr. Bockus alleges that Maple Pro engaged in gender discrimination when it used allegations of sexual harassment as a pretext for terminating him and when it failed to give him notice of the sexual harassment allegations and investigate them more thoroughly. Maple Pro argues that both claims are precluded because Mr. Bockus already litigated them in federal court. The court concurs.

The parties have framed this as a question of issue preclusion. The proper analytical lens, however, is the doctrine of claim preclusion. *See State v. Nutbrown-Covey*, 2017 VT 26, ¶ 12 n.2, 204 Vt. 363 (clarifying when to apply issue preclusion and when to apply claim preclusion). Issue preclusion applies when a party attempts to litigate an issue that was "necessary to" and "essentially determined in" a previous final judgment on the merits. *State v. Pollander*, 167 Vt. 301, 305 (1997). Claim preclusion, in contrast, applies when the subject matter and causes of action are the same or substantially identical to those in a previous action. *Carlson v. Clark*, 2009 VT 17 ¶ 13, 185 Vt. 234. Claim preclusion will preclude a claim from being litigated if "(1) a previous final judgment on the merits exists, (2) the case was between the same parties or parties in privity, and (3) the claim has been or could have been fully litigated in the prior proceeding." *In re St. Mary's Church Cell Tower*, 2006 VT 103, ¶ 3, 180 Vt. 638 (mem.). That doctrine clearly applies here.

Those criteria are all clearly met here. The federal case was between the same parties. The federal court dismissed the gender discrimination claims with prejudice. *Bockus v. Maple Pro, Inc.*, No. 5:19-cv-00237-gwc, slip op. at 10 (Dec. 17, 2019). The Second Circuit affirmed. The dismissal was therefore a final judgment on the merits. *See, e.g., Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 408 n.3 (1981) ("the dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits.' "); *see also Cenlar FSB v. Malenfant*, 2016 VT 93, ¶ 20, 203 Vt. 23 ("Dismissal of a claim 'with prejudice' operates as an adjudication on the merits.' "). In his federal case, Mr. Bockus characterized as gender discrimination Maple Pro's failure to give him notice of the sexual harassment allegations, to talk to him and hear his side of the story, and to investigate fully. *Bockus v. Maple Pro, Inc.*, No. 5:19-cv-00237-gwc, Complaint ¶ 17 at 10 (Dec. 17, 2019). That those allegations are not identical to those made here is of no moment; the question instead is whether the claims Mr. Bockus seeks to litigate here could have been litigated in the federal case. Clearly, they could. Mr. Bockus's claims in both cases fall under Vermont's Fair Employment Practices Act, 21 V.S.A. § 495, have the same standards and burdens, and are supported by the same

Decision on Pending Motions
21-CV-02243 Timothy Bockus v. Maple Pro, Inc.

Page **6** of **12**

evidence. *See Am. Trucking Ass'ns v. Conway*, 152 Vt. 363, 370 (1998) (stating "for the purposes of claim preclusion, two causes of action are the same if they can be supported by the same evidence.").[1]

Nor does the doctrine of law of the case save Mr. Bockus's gender discrimination claims. As he notes, on Maple Pro's Motion to Dismiss, this court declined to dismiss these claims; he argues that the law of the case doctrine precludes the court from revisiting that decision. This argument rests principally on a misapplication of the law of the doctrine.

Early in the case, the court denied Maple Pro's motion to dismiss. With no discussion or elaboration, the court concluded, "Defendants have not shown that the federal dismissals preclude this suit on this record." *Bockus v. Maple Pro, Inc.*, No. 21-CV-2243, Entry Regarding Motion, 1 (Oct. 16, 2021). Of necessity, this decision was made on the face of the complaint, with no evidentiary record; that record now makes clear that the claims in the federal case and this can be supported by the same evidence. The law of the case doctrine does not preclude a court's revisiting a prior decision on a better-developed record. Moreover, "the law-of-the-case doctrine normally does not bind the trial court. [Rather], it is a rule of practice from which the court may depart in a proper case and courts have discretion to reopen what has been decided if required."). *Kneebinding, Inc. v. Howell*, 2018 VT 101, ¶ 31, 208 Vt. 579. Here, frankly, the lack of analysis underlying the court's earlier decision does not command respect or deference; instead, it invites a closer look in the light of a more fully developed record. That closer look, in turn, persuades the court that its earlier decision was erroneous. *Cf. Massachusetts v. United States*, 333 U.S. 611, 639–640 (1948) (Jackson, J., dissenting) ("I see no reason why I should be consciously wrong today because I was unconsciously wrong yesterday.").

<u>Count IV—Breach of Implied Contract</u>

In Count IV, Mr. Bockus acknowledges that he was an at-will employee. He asserts, however, that Maple Pro's employee manual modified this relationship. More specifically, he asserts that it imposed a mandatory progressive disciplinary process and, separately, a requirement that sexual harassment investigations be thorough and include notification to and an interview of the accused

---

[1] As an aside, the court would observe that whether or not claim preclusion applies here, the narrower doctrine of issue preclusion would require judgment for Maple Pro on Count II. Issue preclusion applies when "(1) preclusion is asserted against one who was a party or in privity with a party in the earlier action; (2) the issue was resolved by a final judgment on the merits; (3) the issue is the same as the one raised in the later action; (4) there was a full and fair opportunity to litigate the issue in the earlier action; and (5) applying preclusion in the later action is fair." *Trepanier v. Getting Organized, Inc.*, 155 Vt. 259, 265 (1990). Comparison of Count II of the Complaint here with Count I of his federal Complaint reveals that the two are virtually identical. The issues raised here are therefore identical to those the federal court determined when it concluded that Count I of that Complaint failed to state a claim. There can be no argument that Mr. Bockus did not have a full and fair opportunity to litigate that question; he had, effectively, three separate bites at that apple. And it certainly is not unfair to bar him from litigating that issue further, against the very same party who prevailed on it before.

employee. Consideration of the manual and Maple Pro's actions in light of the applicable law makes clear that this claim does not survive.

In Vermont, employment relationships for indefinite periods of time, as here, are presumptively at-will. *See Dillon v. Champion Jogbra*, 175 Vt. 1, 5 (2002). Nevertheless, "an employer may modify an at-will employment agreement unilaterally." *Id.* When determining whether an employer has done so, courts "look to both the employer's written policies and its practices." *Id.* An employer not only may implicitly bind itself to terminating only for cause through its manual and practices, but may also be bound by a commitment to use only certain procedures in doing so. *Id.* "[A]n employer does not bind itself to act in a particular way if it merely expresses vague goals or values; it must include sufficiently definite terms to be bound by those policies." *Cate v. City of Burlington*, 2013 VT 64, ¶ 17, 194 Vt. 265. Thus, for additional protections to vest, the policies must be "definitive in form, communicated to the employees, and demonstrate an objective manifestation of the employer's intent to bind itself . . . . General statements of policy will not meet the requirements of a unilateral contract." *Ross v. Times Mirror, Inc.*, 164 Vt. 13, 20 (1995). Where the meaning of the employee manual is unambiguous, the court interprets it as a matter of law. *Dillon*, 175 Vt. at 6. If the handbook is ambiguous, "the question of whether the presumptive at-will status has been modified is properly left to the jury." *Id.* at 6–7.

Mr. Bockus points to two separate provisions in the Maple Pro Employee Manual that he asserts create enforceable obligations that Maple Pro breached. First, he argues that Maple Pro failed to follow its "Disciplinary measure" policy. Second, he argues that it failed to follow the procedures set out in its "Policy against discrimination and harassment." Examination of each of these provisions reveals, however, that neither made the promise Mr. Bockus asserts to have been broken.

It is important to note at the outset that nowhere in the Employee Manual does Maple Pro state or suggest that employment is anything other than at will. The manual unambiguously sets out its purpose:

> This manual was written to inform our employees about our policies, rules and advantages that our employees benefit from.

This statement, of course, does nothing more than express vague goals or values. The court therefore turns to the specific provisions on which Mr. Bockus relies.

The "Disciplinary measure" policy reads as follows:

> This policy was put in place in order to make sure that the disciplinary process is well structured and to ensure respect of our employees.

Decision on Pending Motions
21-CV-02243 Timothy Bockus v. Maple Pro, Inc.

Page 8 of 12

The disciplinary actions available, depending on the situation, are as followed [sic]:

1. Verbal warning
2. Written warning
3. Suspension without pay
4. Dismissal

The disciplinary action will be given to the employee during a disciplinary meeting. At this meeting the employee, the direct supervisor and a member of the HR department will be present.

It is possible that a more in depth investigation is required to fully understand a situation. The employer can, if necessary, suspend with pay an employee for the duration of the investigation. <u>The suspension for investigation is not a disciplinary action but rather an administrative one.</u>

The disciplinary action will be kept in the employee's file indefinitely. Although, a disciplinary measure can't be used in a gradual scale of punishment if the misconduct happened eighteen (18) months before the new misconduct of the same nature.

For example, if an employee is at the point where the next time he is late, he will be suspended but does 18 months without being late. (sic) The next time he is late, we start over in the disciplinary measure.

Mr. Bockus argues that this provision commits Maple Pro to a progressive discipline regime. It plainly does not. While it lists disciplinary measures in order of severity, it neither expressly nor implicitly suggests that Maple Pro will issue sanctions in escalating order. Rather, it states clearly that these actions are all "available, depending on the situation." In short, "the policy expressly leaves the disciplinary sanction to the employer's discretion." *Ross*, 164 Vt. at 21. That is the polar opposite of a progressive discipline policy.

Next, the "Policy against discrimination and harassment" provides:

[Maple Pro] wants to provide employees with an environment free of discrimination and harassment of any kind. We offer the possibility to every employee that thinks he/she is a victim of it, to place a complaint.

As an employer, [Maple Pro] has the power and the obligation to take the necessary measures to prevent any kind of discrimination or harassment. Every employee has the right to be treated with respect in accordance with the laws touching the rights of individuals.

An investigation will be automatically conducted when we receive a complaint of discrimination or harassment in the workplace.

Decision on Pending Motions
21-CV-02243 Timothy Bockus v. Maple Pro, Inc.

Page **9** of **12**

Mr. Bockus argues that this provision somehow expresses an enforceable promise that, in cases of allegations of sexual harassment, the employer will undertake a thorough investigation that includes interviewing the accused employee. Again, it plainly does not. While it does promise that Maple Pro will conduct an investigation whenever it "receive[s] a complaint of discrimination or harassment in the workplace," it does not in any way prescribe the form that investigation will take. To read into this provision a promise that Maple Pro will interview the accused employee—or afford him any procedural protections, for that matter—is a flight of fancy the court cannot take. "[O]nly those policies that are definitive in form" can be enforced. *Id.* at 20. As with the "Disciplinary measure" policy, the policy for which Mr. Bockus argues is far from definitive, to say the very least. His implied contract claim fails.

<u>Count V—Statutory Forfeiture for Unpaid Wages Still Due</u>

In Count V, Mr. Bockus alleges that he "still has not been fully paid the full commissions owed him." Maple Pro argues that the statute of limitations bars all claims for commissions earned before March 13, 2018, and that Mr. Bockus cannot prove that he was not paid for any commissions earned after that date. While the statute of limitations is at play here, it does not operate as Maple Pro suggests. Equally, viewing the evidence in the light most favorable to Mr. Bockus, he has evidence sufficient to suggest that Maple Pro may not have paid him all commissions to which he was entitled. Thus, this claim survives.

In its motion, Maple Pro observes that Mr. Bockus's unpaid commission claim is subject to the 2-year limitation period set forth in 12 V.S.A. § 520. He filed suit on August 6, 2021. Adding in the COVID tolling period enacted in the 2020 legislative session, this means that all claims that accrued before March 13, 2018, are barred.

The limitations period set forth in 12 V.S.A. § 520 runs from the date the cause of action "accrues." This means that the period begins to run "when a party discovers, or in the exercise of reasonable diligence should have discovered, his or her injury." *Cavanaugh v. Abbott Laboratories*, 145 Vt. 516, 524 (1985) (overruled on unrelated grounds by *State v. Atlantic Richfield Co.*, 2016 VT 61, 202 Vt. 212); *University of Vermont v. W.R. Grace & Co.*, 152 Vt. 287, 290–91 (1989). Maple Pro argues that Mr. Bockus was aware of how his commissions were to be paid and knew or should have known of any failures to pay them when those failures occurred. Thus, it argues, he is limited to claims for commissions earned but not paid after March 13, 2018.

Maple Pro has produced no evidence of Mr. Bockus's subjective knowledge, at the time of any commission payment, that the payment was short. He asserts that he was unaware of any failures to

pay until November 2018. Viewing the evidence on this topic in the light most favorable to Mr. Bockus, there is at least a genuine dispute.

Equally, there is a genuine dispute as to when Mr. Bockus should have known that Maple Pro was not paying commissions. Again, he asserts that it was only when he was advised by a colleague in Human Resources that some New York sales, on which he was entitled to a commission, were being improperly coded, depriving him of those commissions. This assertion is objectively reasonable. Because Mr. Bockus earned commissions on sales he did not make, unless Maple Pro told him of those sales—presumably by coding them properly—he did not necessarily have knowledge of them.

Moreover, Mr. Bockus's sales were calculated monthly. His commission payments, however, were made bi-weekly, with pay periods often beginning in one month and ending in another. As the court's own efforts to match evidence of sales with evidence of payments reveal, this made the effort to track and link sales and commissions difficult, to say the least. In short, when Mr. Bockus should have known that Maple Pro was not paying commissions to which he was entitled remains an issue that must be resolved by a jury.

The jury may be limited, however, in how much it can award on this claim. Maple Pro fairly challenged Mr. Bockus to come forward with evidence of unpaid commissions. It argues that between March 13, 2018 and March 5, 2019, it paid Mr. Bockus a total of $88,660.89, but that in that period, Mr. Bockus only earned a maximum of $63,580.23. It therefore asserts that Mr. Bockus cannot prove that he was underpaid. Maple Pro arrives at these figures, however, by excluding from its calculations all allegedly unpaid commissions prior to March 13, 2018. It also fails to account for the effect of delays in payment of commissions earned.

In response, Mr. Bockus has submitted evidence, principally in the form of a Declaration and a Supplemental Declaration from an accountant, Ms. Granai, that if believed could call into question the accuracy of Maple Pro's accounting for sales made and commissions paid. This evidence suggests that Mr. Bockus could prove that Maple Pro failed to pay him commissions related to three categories of sales: (1) three New York sales coded 889, for which he has documentary proof; (2) New York sales coded 889, for which he has no concrete documentary proof; and (3) sales not coded 889. In the first category, Mr. Bockus has produced three invoices (#413082, #413713, and #414602) documenting sales to New York customers, all coded 889, which are not sales to Forest Farmers. Under the parties' commission agreement, there should be no sales coded 889 except those to Forest Farmers. This evidence, viewed in the light most favorable to Mr. Bockus, would support a finding that Maple Pro failed to pay $285 in commissions due on these sales.

In the second category, Maple Pro's exhibits, viewed in the light most favorable to Mr. Bockus, appear to show that it failed to pay Mr. Bockus for some sales which were coded 889 in addition to those for which Mr. Bockus has invoices. Ms. Granai's Supplemental Declaration suggests that Maple Pro's sales to Forest Farmers, which were properly coded "889," amounted to $296,238; Mr. Bockus appears to have been paid all commission due on these sales. Apparently, however, Maple Pro improperly coded "889" an additional $223,140 of New York sales, thereby denying Mr. Bockus commission due on those sales. Presumably, Mr. Bockus would have been entitled to a 2% commission on these sales, resulting in a shortfall of $4,462.80.

Finally, Ms. Granai's evidence suggests that Maple Pro underpaid Mr. Bockus for commissions due on New York sales that were not coded "889." Her calculations for the period from March 13, 2018 through March 5, 2019 suggest that Maple Pro underpaid Mr. Bockus by $2,234.00 during that period. She also observes that Maple Pro's final payoff does not include any commissions for sales that occurred between March 1–5, 2019, while it recorded New York sales during that period in the amount of $34,432. This observation would suggest a further shortfall of $688.64.

It bears emphasis that the calculations above do not conclusively prove that Maple Pro failed to pay commissions to Mr. Bockus. Nor do they provide sufficient certitude on the high end to allow the court to conclude that any award Mr. Bockus may prove must be capped at the numbers recited above. Rather, they simply confirm that Mr. Bockus does have admissible evidence on which a jury could properly conclude that Maple Pro failed to pay all commissions due. This is sufficient to defeat summary judgment on this issue. Whether Mr. Bockus was underpaid at all, and whether there is any evidence to support an award beyond that suggested by the foregoing calculations, are questions that must await trial.

## ORDER

The court denies the Motion to Amend. It grants the motion for summary judgment in part and denies it in part. Judgment will enter for Maple Pro on Counts II, III, and IV. Counts I and V remain for trial. The clerk will schedule a pretrial conference.

Electronically signed pursuant to V.R.E.F. 9(d): 1/30/2024 3:22 PM

Samuel Hoar, Jr.
Superior Court Judge